CORRIGAN, J.
In this case, we consider the assessment of attorney fees for “overdue” benefits under Michigan’s no-fault insurance statutes. MCL 500.3101 et seq.[1] Under these statutes, personal protection insurance *511 benefits become “overdue” when an insurer fails to pay “within 30 days after an insurer receives reasonable proof of the fact and of the amount of loss sustained.” MCL 500.3142(2). “An attorney is entitled to a reasonable fee for advising and representing a claimant in an action for personal. . . protection insurance benefits which are overdue.” MCL 500.3148(1). Moreover, “the attorney’s fee shall be a charge against the insurer ... if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment.” Id. Therefore, whether a claimant’s benefits qualify as overdue and whether an insurer unreasonably refused to pay or unreasonably delayed in making payment determine if a claimant’s attorney may receive attorney fees.
In this case, a jury awarded plaintiff $50,000 in noneconomic damages and $42,755 in unpaid work loss benefits after defendant insurer stopped paying personal protection insurance benefits. The jury also awarded $98.71 in penalty interest for overdue work loss benefits. The trial court granted plaintiffs motion for attorney fees and costs, and the Court of Appeals affirmed.
Because the Court of Appeals erred in its interpretation of MCL 500.3142 and MCL 500.3148, we reverse. *512 Because the jury awarded plaintiff only $98.71 in penalty interest and failed to award penalty interest on the $42,755 awarded in unpaid work loss benefits, we conclude that those benefits do not qualify as overdue pursuant to MCL 500.3142(2). We also conclude that the discontinuation of plaintiffs benefits was reasonable under MCL 500.3148(1). Because plaintiff offered no additional reasons to support the unreasonableness of defendant’s refusal to pay benefits, plaintiff is not entitled to attorney fees. Moreover, we reject the Court of Appeals erroneous statement that an insurer’s initial refusal to pay no-fault insurance benefits can be deemed unreasonable even though it is later determined that the insurer was not required to pay those benefits.
I. FACTS AND PROCEDURAL HISTORY
On September 27, 2000, a pickup truck struck the passenger side of plaintiff Hattie Moore’s automobile while she was driving on 1-475 in Genesee County. Because of the accident, plaintiff fractured her right knee, causing a bone chip. Before the accident, plaintiff had suffered from osteoarthritis in both knees, and she had been treated by an orthopedic surgeon, Dr. Norman Walter. According to Dr. Walter, in November 1999, 10 months before the accident, he discussed knee replacement surgery and injection treatments with plaintiff.
After the accident, plaintiff could not return to her regular employment as a custodian. Defendant began paying plaintiff work loss and other no-fault benefits in December 2000. Defendant first paid plaintiff in December 2000. Because of a computer glitch, however, defendant did not make its next payment to plaintiff until March 2001. Before the trial, defendant rectified its error, paying plaintiff the omitted payments as well *513 as the 12 percent penalty interest that defendant owed. Dr. Walter recommended surgery on plaintiffs right knee to repair the injury caused by the accident. On January 22, 2001, Dr. Charles Xeller, a second orthopedic surgeon, performed an independent medical evaluation (IME) of plaintiff at defendant’s request. Dr. Xeller agreed that plaintiffs right knee required surgery, which Dr. Walter performed on January 26, 2001.
Following surgery, plaintiff remained off work and continued treatment with Dr. Walter. In March 2001, defendant retained Dan Schingeck, a nurse case manager, to evaluate whether plaintiff could return to work. Schingeck met with Dr. Walter on August 30, 2001. After their meeting, Dr. Walter opined that plaintiff would never be able to return to her normal employment as a custodian. Dr. Walter’s records do not reflect whether he attributed plaintiffs inability to work to her accident-related injuries or her preexisting osteoarthritis.
Defendant continued to pay work loss and other no-fault benefits until Dr. Xeller performed a second IME on September 25, 2001. After the second IME, Dr. Xeller prepared a seven page report for defendant. In his report, Dr. Xeller opined that plaintiff did not need further treatment for her orthopedic complaints related to the accident. Rather, he concluded that plaintiff had severe osteoarthritic degeneration in both knees that predated the accident, and that the accident had not exacerbated plaintiffs underlying osteoarthritis. Dr. Xeller determined that plaintiff could return to work with restrictions including, “no climbing, no walking on uneven ground, no kneeling or squatting, limited walking, and no overhead lifting.” Additionally, Dr. Xeller opined that plaintiff needed a total left knee replacement and possibly a total right knee replacement in the future.
*514 In November 2001, defendant discontinued plaintiffs no-fault benefits because reasonable proof of plaintiffs claim no longer existed on the basis of Dr. Xeller’s report. Plaintiff filed suit, seeking first-party no-fault benefits from defendant. Plaintiff and her husband also filed a second suit seeking uninsured motorist benefits from defendant.
At trial, plaintiff sought approximately $96,000 in work loss benefits, $21,000 for household or replacement services, and more than $11,000 in penalty interest. The jury awarded plaintiff $42,755 in work loss benefits, no damages for household or replacement services, and only $98.71 in penalty interest for overdue payments. Plaintiff filed a postjudgment motion for no-fault attorney fees and costs under MCL 500.3148(1). After a hearing to determine attorney fees and costs, the trial court awarded plaintiff the full amount that she requested, $79,415.
Defendant appealed both the trial court’s decision to grant attorney fees and costs and the amount of attorney fees and costs awarded to plaintiff. In a divided opinion, the Court of Appeals affirmed the trial court’s award of $79,415 in attorney fees and costs.[2] Relying on a definition of unreasonableness from Liddell v Detroit Automobile Inter-Ins Exch, 102 Mich App 636, 650; 302 NW2d 260 (1981), the Court concluded that “the trial court properly found the denial of benefits here unreasonable where defendant made no inquiry beyond the opinion of its own IME doctor.”[3] The Court held that the defendant insurer owed overdue benefits and that the plaintiff satisfied conditions for attorney fees when “it *515 was determined below that the denial of the benefits was unreasonable, and the jury found at least some of the benefit payments overdue.”[4] The Court held that the trial court did not abuse its discretion “in awarding plaintiff $79,415 in attorney fees when the jury awarded plaintiff only $98.71 in penalty interest” because an insurer may “unreasonably refuse to pay benefits even if the insurer is later deemed not liable for them.”[5]
Court of Appeals Judge KURTIS T. WILDER dissented.[6] Judge WILDER reasoned that plaintiffs benefits were not overdue and, therefore, plaintiff had no claim for attorney fees “[u]nder the unambiguous language of MCL 500.3148(1).”[7] Moreover, Judge WILDER concluded that, given the jury’s award of $98.71 in penalty interest, it necessarily determined that defendant unreasonably had delayed payment of only one week of work loss benefits.[8] Judge WILDER further stated that, “[i]n my view, no part of the $79,415 in attorney fees and costs in this case was attributable to collecting the $822.52 overdue benefit, because that overdue benefit was paid long before litigation.”[9] Therefore, Judge WILDER would have held “that the trial court erred as a matter of law in granting attorney fees, because the jury did not award overdue benefits to the plaintiff.”[10] Defendant then applied for leave to appeal to this Court. We scheduled oral argument on the application and directed the parties to address:
*516 (1) whether the benefits at issue were “overdue,” MCL 500.3148(1), 500.3142(2); (2) whether defendant “unreasonably refused to pay the claim or unreasonably delayed in making proper payment,” MCL 500.3148(1); (3) assuming defendant unreasonably refused to pay, but also assuming that only a portion of the benefits sought and awarded were “overdue,” whether MCL 500.3148(1) permits recovery of attorney fees for all benefits sought and recovered; and (4) whether the Court of Appeals erred in suggesting that “it is . . . possible for an insurer to unreasonably refuse to pay benefits even if the insurer is later deemed not liable for them.” [Moore v Secura Ins, 482 Mich 883 (2008).]
II. STANDARD OF REVIEW
The Court reviews de novo issues of statutory interpretation. Saffian v Simmons, 477 Mich 8, 12; 727 NW2d 132 (2007). “The trial court’s decision about whether the insurer acted reasonably involves a mixed question of law and fact. What constitutes reasonableness is a question of law, but whether the defendant’s denial of benefits is reasonable under the particular facts of the case is a question of fact.” Ross v Auto Club Group, 481 Mich 1, 7; 748 NW2d 552 (2008). This Court reviews de novo questions of law, but we review findings of fact for clear error. Id. “A decision is clearly erroneous when ‘the reviewing court is left with a definite and firm conviction that a mistake has been made.’ ” Id., quoting Kitchen v Kitchen, 474 Mich 654, 661-662; 641 NW2d 245 (2002). Moreover, we review a trial court’s award of attorney fees and costs for an abuse of discretion. Smith v Khouri, 481 Mich 519, 526; 751 NW2d 472 (2008). An abuse of discretion occurs when the trial court’s decision is outside the range of reasonable and principled outcomes. Id.
*517 III. LEGAL ANALYSIS
A. OVERDUE BENEFITS
“When interpreting statutes, our primary goal is to give effect to the intent of the Legislature.” Nastal v Henderson & Assoc Investigations, Inc, 471 Mich 712, 720; 691 NW2d 1 (2005). We review the language of the statute itself and give the words used by the Legislature their common and ordinary meaning. Id. “If the statutory language is unambiguous, we must presume that the Legislature intended the meaning it clearly expressed and further construction is neither required nor permitted.” Id.
MCL 500.3148(1) establishes two prerequisites for the award of attorney fees. First, the benefits must be overdue, meaning “not paid within 30 days after [the] insurer receives reasonable proof of the fact and of the amount of loss sustained.” MCL 500.3142(2). Second, in postjudgment proceedings, the trial court must find that the insurer “unreasonably refused to pay the claim or unreasonably delayed in making proper payment.” MCL 500.3148(1). Therefore, assigning the words in MCL 500.3142 and MCL 500.3148 their common and ordinary meaning, “attorney fees are payable only on overdue benefits for which the insurer has unreasonably refused to pay or unreasonably delayed in paying.” Proudfoot v State Farm Mut Ins Co, 469 Mich 476, 485; 673 NW2d 739 (2003) (emphasis omitted).
In this case, the verdict form instructed jurors to award “12 percent interest per annum from the date that the expense or loss became overdue.” In contrast, the trial court’s jury instructions simply directed jurors to award 12 percent interest with no indication that the 12 percent interest should be “per annum.” Moreover, the trial court specifically instructed the jury that if *518 plaintiff did not provide reasonable proof for her entire claim, then it must award interest for any pro rata portion for which plaintiff did supply reasonable proof. While plaintiff requested more than $11,000 in penalty interest, defendant requested that the jury award plaintiff only $121.50 in penalty interest. Instead of awarding the amount requested by either party, the jury awarded only $98.71 in penalty interest.[11]
The jury’s decisions to award plaintiff $42,755 in unpaid work loss benefits, but only $98.71 in penalty interest, seems inconsistent because if the jury had determined that the work loss benefits owed were overdue, then the jury instructions mandated that it award 12 percent penalty interest on the full amount of overdue benefits, as required by MCL 500.3142(3). This Court will uphold a jury’s verdict, however, where “ ‘there is an interpretation of the evidence that provides a logical explanation for the findings of the jury.’ ” Bean v Directions Unlimited, Inc, 462 Mich 24, 31-32; 609 NW2d 567 (2000), quoting Granger v Fruehauf Corp, 429 Mich 1, 7; 412 NW2d 199 (1987).
The jury’s conclusion that plaintiff was owed work loss benefits did not also require it to conclude that those benefits were overdue. It may have concluded that the preexisting osteoarthritic degeneration in plaintiffs knees cast doubt on whether defendant had reasonable proof of plaintiffs accident-specific injuries, and, therefore, whether payments were due under MCL 500.3142(2). The jury also may have concluded that defendant should not be faulted for its computer glitch where plaintiff did not promptly notify defendant about the error. The jury’s award of $98.71 in penalty interest *519 represents exactly 12 percent of one week of plaintiff s work loss benefits, which defendant calculated at $822.52. Thus, the jury decided that only one week of work loss benefits was overdue. Because there is an interpretation of the evidence that provides a logical explanation for the jury’s verdict, we uphold it.
MCL 500.3148(1) further provides that an attorney may only receive fees for representing a claimant in an action for “benefits which are overdue.” In MCL 500.3142(2), the Legislature explains that overdue benefits are those benefits “not paid within 30 days after an insurer receives reasonable proof of the fact and of the amount of loss sustained.” Neither MCL 500.3142(2) nor MCL 500.3148(1) permits the recovery of attorney fees for actions in which a court awarded plaintiff benefits that were reasonably in dispute, or, stated slightly differently, benefits not yet overdue.
In addition to being consistent with Judge WlLDER’s dissent,[12] our view coincides with another Court of Appeals decision in which a jury refused to award penalty interest because benefits were not overdue under MCL 500.3142. Beach v State Farm Mut Automobile Ins Co, 216 Mich App 612; 550 NW2d 580 (1996). In Beach, the Court held that a jury’s decision that benefits were not overdue for purposes of MCL 500.3142 precluded the trial court from awarding attorney fees pursuant to MCL 500.3148(1) because a plaintiff is entitled to attorney fees only for overdue benefits. Id. at 630.
The Court of Appeals erred by failing to follow the unambiguous language of MCL 500.3142 and MCL 500.3148. In this case, despite instructions from the trial court and on the verdict form, the jury declined to *520 award penalty interest on the $42,755 in unpaid work loss benefits that it awarded plaintiff. From its award of $98.71 in penalty interest, we conclude that the jury found that only one week of work loss benefits was overdue. Therefore, the jury must have found that the $42,755 in work loss benefits was not overdue under the plain meaning of MCL 500.3142 and MCL 500.3148. Because, as noted above, “ ‘there is an interpretation of the evidence that provides a logical explanation’ ” for this finding, Bean, supra at 31, quoting Granger, supra at 7, we agree with the jury’s conclusion that the $42,755 in work loss benefits was not overdue at the time of the trial.
B. UNREASONABLE REFUSAL OR DELAY
MCL 500.3148(1) provides in relevant part, “[t]he attorney’s fee shall be a charge against the insurer in addition to the benefits recovered, if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment. ” The Court of Appeals recognized that an insurer’s refusal to pay benefits is not unreasonable “ ‘[i]f the insurer’s refusal or delay in payment is the product of a legitimate question of statutory construction, constitutional law, or a bona fide factual uncertainty.’ ”[13] The Court traced its definition of “unreasonableness” to Liddell, supra at 650, in which the Court affirmed attorney fees under MCL 500.3148 “on the basis of the refusal of the defendant insurer to reconcile the opinion of one doctor that the plaintiffs injuries from an accident no longer precluded him from employment with the contradictory opinions of the plaintiffs treating physicians.”[14] Comparing the facts of this case to the facts of Liddell, the *521 Court reasoned, “[h]ere, as in Liddell, defendant insurer terminated plaintiffs work loss benefits without attempting to reconcile the opinions of its independent medical examiner and plaintiffs treating physicians.” The Court of Appeals concluded, “[u]nder these circumstances, the trial court did not clearly err in finding that defendant unreasonably terminated plaintiffs benefits . . . .”[15]
We reject the Court of Appeals analysis of Liddell. In Liddell, the Court held that a trial court did not clearly err when it found an insurer’s conduct unreasonable where the insurer “did not attempt to contact” physicians with conflicting opinions “or in some other way attempt to ascertain the true situation in the face of contradictory reports.”[16] Nothing in the plain language of MCL 500.3148(1), however, requires an insurer to reconcile conflicting medical opinions. Moreover, nothing otherwise implicit in the statute requires an insurer to reconcile competing medical opinions. Therefore, in accordance with the plain language of MCL 500.3148(1), we overrule Liddell.
The Court of Appeals erred in affirming the trial court’s finding that, because defendant knew that other doctors were involved in plaintiffs case, it was “incumbent upon the carrier to go beyond” defendant’s doctor and that the defendant insurer “could have sought further information before exercising the draconian termination of critical benefits for one who is injured.”[17] The Court of Appeals misconstrued the plain language of MCL 500.3148(1) and thereby imposed additional duties on insurers beyond those duties already established in Michigan’s no-fault insurance statutes. We *522 acknowledge that the trial court’s decision about whether an insurer acted reasonably presents a mixed question of law and fact.[18] We hold that the trial court here erred as a matter of law.
The plain language of MCL 500.3101 et seq. does not impose an independent duty on insurers to “go beyond” the medical opinion of their physicians and the IMEs that those physicians perform. Instead, “[t]he determinative factor in our inquiry is not whether the insurer ultimately is held responsible for benefits, but whether its initial refusal to pay was unreasonable.”[19] To determine whether the initial refusal to pay was unreasonable, the trial court must give effect to the unambiguous language of MCL 500.3148(1). MCL 500.3148(1) requires that the trial court engage in a fact-specific inquiry to determine whether “the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment.”
We conclude that an insurer need not resort to a “tie breaker” to resolve conflicting medical reports, but we note that an insurer acts at its own risk in terminating benefits in the face of conflicting medical reports.[20] Here, however, defendant’s decision not to seek out another physician to prepare yet another IME in order to reconcile the conflicting opinions of Dr. Walter and Dr. Xeller was not unreasonable under the fact-specific inquiry mandated by MCL 500.3148. MCL 500.3142(2) provides in relevant part: “ [i]f reasonable proof is not *523 supplied as to the entire claim, the amount supported by reasonable proof is overdue if not paid within 30 days after proof is received by the insurer.” Under the plain language of the statute, the claimant shoulders the initial burden to supply reasonable proof of her entire claim, or reasonable proof for some portion thereof. When the claimant provides such evidence, the insurer then must evaluate that evidence as well as evidence supplied by the insurer’s doctor before making a reasonable decision regarding whether to provide the benefits sought.
We reject the trial court’s conclusion that the defendant insurer must “go beyond” defendant’s doctor or IME. We hold that the Court of Appeals erred in affirming the trial court’s ruling that defendant unreasonably terminated plaintiffs benefits. Under the unambiguous language of MCL 500.3148(1) and MCL 500.3142(2), defendant’s decision to discontinue plaintiffs benefits in light of a legitimate factual uncertainty was reasonable.
C. ATTORNEY FEES
In Proudfoot, supra at 485, this Court held that “attorney fees are payable only on overdue benefits for which the insurer has unreasonably refused to pay or unreasonably delayed in paying.” (Emphasis omitted.) MCL 500.3148(1) provides in relevant part, “[t]he attorney’s fee shall be a charge against the insurer in addition to the benefits recovered, if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment.”
In this case, the jury found that $822.52, or only one week of plaintiffs unpaid work loss benefits, were overdue. Generally, plaintiffs attorney would be entitled to attorney fees incurred to collect those overdue *524 benefits. Here, however, before plaintiffs suit went to trial, defendant already had paid plaintiff $822.52 for one week of work loss benefits and all other payments that defendant owed as a result of the computer glitch. Because plaintiff did not attribute any of the $79,415 that the trial court awarded her in attorney fees and costs to collecting $822.52 in overdue work loss benefits, plaintiff is not entitled to attorney fees.
Moreover, because, as shown above, defendant did not unreasonably refuse to pay work loss benefits, plaintiff is not entitled to attorney fees incurred to collect the $42,755 awarded by the jury. Our review of the lower court record reveals that plaintiff proffered only one reason that defendant’s refusal to pay benefits was unreasonable under MCL 500.3148(1). Specifically, during the hearing on plaintiffs motion for attorney fees, plaintiffs counsel argued that defendant unreasonably discontinued benefits solely because of defendant’s reliance on the second IME performed by Dr. Xeller. Related to his broader argument, plaintiffs counsel faulted defendant for not sharing Dr. Xeller’s IME with plaintiffs other physicians, not asking plaintiffs other physicians if they agreed with Dr. Xeller’s second IME, and not educating themselves about osteoarthritis. To further buttress his argument, plaintiff s counsel relied on Liddell for the proposition that defendant must reasonably evaluate plaintiffs medical condition.
As previously discussed, however, defendant’s reliance on Dr. Xeller’s second IME was not unreasonable under the plain language of MCL 500.3148(1). Forcing defendant to “go beyond” what the unambiguous statutory language mandates would effectively require it to shoulder plaintiffs initial burden pursuant to MCL 500.3142(2). Further, this Court already has concluded *525 that the Court of Appeals misconstrued Liddell and, therefore, that Court’s reading of Liddell is inapplicable. Moreover, even if we had not overruled Liddell and the case were applicable, we note that defendant here did significantly more than the insurer in that case, including requesting two separate IMEs and hiring a nurse case manager to investigate whether plaintiff could return to work.
Because plaintiff did not attribute any of the $79,415 that the trial court awarded her in attorney fees and costs to collecting the $822.52 in overdue work loss benefits as determined by the jury’s penalty interest award, and because there is no evidence in the lower court record that defendant’s refusal to pay benefits was unreasonable, plaintiff is not entitled to any attorney fees under MCL 500.3148(1).
D. ERRONEOUS STATEMENT OF LAW
The Court of Appeals majority erred by relying on McCarthy v Auto Club Ins Ass’n, 208 Mich App 97; 527 NW2d 524 (1994), for the proposition that “[i]t is ... possible for an insurer to unreasonably refuse to pay benefits even if the insurer is later deemed not liable for them.”[21] In actuality, the McCarthy Court addressed the inverse proposition, namely, that “the scope of inquiry under [MCL 500.3148] is not whether the insurer ultimately is held responsible for a given expense, but whether its initial refusal to pay the expense was unreasonable.” McCarthy, supra at 105. Otherwise stated, an insurer’s initial refusal to pay benefits under Michigan’s no-fault insurance statutes can be deemed reasonable even though it is later determined that the insurer was required to pay those benefits.
*526 We recently affirmed the proposition expressed in McCarthy that an insurer’s initial refusal to pay no-fault benefits can be deemed reasonable even if it is later determined that the insurer was required to pay those benefits. Ross, supra at 11. This Court’s statement in Ross and the Court’s statement in McCarthy, however, do not permit us to assume that the inverse proposition as expressed by the Court of Appeals is similarly correct. Nothing in our jurisprudence suggests that an insurer’s initial refusal to pay no-fault insurance benefits can be deemed unreasonable, even though it is later determined that the insurer did not owe those benefits. The Court of Appeals proposition effectively penalizes an insurer for refusing to pay benefits that the insurer had no obligation to pay. In contrast, we conclude that if an insurer does not owe benefits, then benefits cannot be overdue. Therefore, before a court may award attorney fees, benefits must be overdue, and an insurer must have unreasonably refused to pay the claim or delayed in payment.
Accordingly, we reject the Court of Appeals statement that “it is . .. possible for an insurer to unreasonably refuse to pay benefits even if the insurer is later deemed not liable for them.” Moore, supra at 204.
IV CONCLUSION
If an insurer’s payment does not qualify as overdue, a claimant’s attorney may not receive attorney fees under Michigan’s no-fault insurance statutes. MCL 500.3101 et seq. In this case, the Court of Appeals failed to give effect to the clearly expressed intent of the Legislature in MCL 500.3142 and MCL 500.3148. Because the jury awarded plaintiff only $98.71 in penalty interest and failed to award penalty interest on the $42,755 that it awarded in unpaid work loss benefits, *527 we conclude that those benefits do not qualify as overdue pursuant to MCL 500.3142(2). Moreover, defendant’s act of discontinuing plaintiff’s benefits did not constitute either an unreasonable refusal to pay or unreasonable delay under MCL 500.3148(1). Because plaintiff offered no additional reasons to support the unreasonableness of defendant’s refusal to pay benefits, plaintiff is not entitled to attorney fees. Finally, we reject the Court of Appeals erroneous statement that an insurer’s initial refusal to pay no-fault insurance benefits can be deemed unreasonable even though it is later determined that the insurer was not required to pay those benefits.
Accordingly, we reverse the Court of Appeals and remand for further proceedings consistent with our opinion.
TAYLOR, C.J., and Young and MArkman, JJ., concurred with Corrigan, J.
CAVANAGH, J., did not participate because of a familial relationship with counsel for Secura Insurance.

 The relevant statutory provisions of MCL 500.3101 et seq. provide:
MCL 500.3142:
(1) Personal protection insurance benefits are payable as loss accrues.
(2) Personal protection insurance benefits are overdue if not paid within 30 days after an insurer receives reasonable proof of the fact and of the amount of loss sustained. If reasonable proof is not supplied as to the entire claim, the amount supported by reasonable proof is overdue if not paid within 30 days after the proof is received by the insurer. Any part of the remainder of the claim that is later supported by reasonable proof is overdue if not paid within 30 days after the proof is received by the insurer. For the purpose of calculating the extent to which benefits are overdue, payment shall be treated as made on the date a draft or other valid instrument was placed in the United States mail in a properly addressed, postpaid envelope, or, if not so posted, on the date of delivery.
(3) An overdue payment bears simple interest at the rate of 12% per annum.
MCL 500.3148:
(1) An attorney is entitled to a reasonable fee for advising and representing a claimant in an action for personal or property protection insurance benefits which are overdue. The attorney’s fee shall be a charge against the insurer in addition to the benefits recovered, if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment.
*511 (2) An insurer may be allowed by a court an award of a reasonable sum against a claimant as an attorney’s fee for the insurer’s attorney in defense against a claim that was in some respect fraudulent or so excessive as to have no reasonable foundation. To the extent that personal or property protection insurance benefits are then due or thereafter come due to the claimant because of loss resulting from the injury on which the claim is based, such a fee may be treated as an offset against such benefits; also, judgment may be entered against the claimant for any amount of a fee awarded against him and not offset in this way or otherwise paid.

 Moore v Secura Ins, 276 Mich App 195; 741 NW2d 38 (2007).

 Moore, supra at 202.

 Id.

 Id. at 203-204.

 Id. at 205.

 Id. at 208-209.

 Id. at 209.

 Id. at 214.

 Id. at 215.

 As Judge Wilder notes in his dissent, $98.71 is 12 percent of $822.52, and $822.52 represents the one week of delayed work loss benefits for which plaintiff provided reasonable proof. Moore, supra at 209.

 Moore, supra at 205-215.

 Moore, supra at 199, quoting Beach, supra at 629.

 Moore, supra at 200.

 Id. at 201.

 Liddell, supra at 651.

 Moore, supra at 200.

 Ross, supra at 7 (“What constitutes reasonableness is a question of law, but whether the defendant’s denial of benefits is reasonable under the particular facts of the case is a question of fact.”).

 Id. at 11.

 Id. (“Accordingly, an insurer’s refusal or delay places a burden on the insurer to justify its refusal or delay. The insurer can meet this burden by showing that the refusal or delay is the product of a legitimate question of statutory construction, constitutional law, or factual uncertainty.”)

 Moore, supra at 204, citing McCarthy, supra at 105.