**Lansing, Michigan**

# Opinion

Chief Justice:

Robert P. Young, Jr.

Justices:

Michael F. Cavanagh
Marilyn Kelly
Stephen J. Markman
Diane M. Hathaway
Mary Beth Kelly
Brian K. Zahra

FILED DECEMBER 21, 2011

STATE OF MICHIGAN

SUPREME COURT

MONA LISA FRAZIER,

      Plaintiff-Appellee,

v

Nos. 142545, 142547

ALLSTATE INSURANCE COMPANY,

      Defendant-Appellant.

MEMORANDUM OPINION.

At issue is whether defendant insurer is liable to plaintiff for personal protection insurance benefits under the no-fault act, MCL 500.3101 *et seq.* MCL 500.3105(1) sets forth the parameters of personal protection insurance coverage. It provides:

> Under personal protection insurance an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, subject to the provisions of this chapter. [MCL 500.3105(1).]

The next section of the act, MCL 500.3106, explains when such liability attaches in the case of a parked vehicle:

Accidental bodily injury does not arise out of the ownership, operation, maintenance, or use of a parked vehicle as a motor vehicle unless any of the following occur:

\* \* \*

(b) . . . [T]he injury was a direct result of physical contact with equipment permanently mounted on the vehicle, while the equipment was being operated or used . . . .

(c) . . . [T]he injury was sustained by a person while occupying, entering into, or alighting from the vehicle. [MCL 500.3106(1).]

MCL 500.3106(1) expressly delineates when "accidental bodily injury aris[es] out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle" if the vehicle is parked. Therefore, in the case of a parked motor vehicle, a claimant must demonstrate that his or her injury meets one of the requirements of MCL 500.3106(1) because unless one of those requirements is met, the injury does not arise out of the use of a vehicle as a motor vehicle, under MCL 500.3105(1). The question here is whether plaintiff qualifies under the exceptions found in MCL 500.3106(1)(b) or (c).

MCL 500.3106(1)(b) centers on the distinction between "equipment" and "the vehicle." "Equipment" is defined as "the articles, implements, etc., used or needed for a specific purpose or activity," while "vehicle" is defined as "any means in or by which someone or something is carried or conveyed: *a motor vehicle*" or "a conveyance moving on wheels, runners, or the like, as an automobile." *Random House Webster's College Dictionary* (1997). Because all functioning vehicles must be composed of constituent parts, no single article constitutes "the vehicle." This reality creates the potential for the definition of "equipment" to engulf that of "the vehicle." However, the language of MCL

2

500.3106(1)(b) forecloses this possibility by requiring that the "equipment" be "mounted on the *vehicle*," which indicates that the constituent parts of "the vehicle" itself are not "equipment."

With respect to MCL 500.3106(1)(c), "alight" means "to dismount from a horse, descend from a vehicle, etc." or "to settle or stay after descending; come to rest." *Random House Webster's College Dictionary* (1997). See also *New Shorter Oxford English Dictionary* (defining "alight" as "to descend and settle; come to earth from the air").[1] Moreover, that the injury must be sustained "while" alighting indicates that "alighting" does not occur in a single moment but occurs as the result of a process. The process begins when a person initiates the descent from a vehicle and is completed when an individual has effectively "descend[ed] from a vehicle" and has "come to rest"—when one has successfully transferred full control of one's movement from reliance upon the vehicle to one's body.[2] This is typically accomplished when "both feet are planted firmly

---

[1] Justice MARILYN KELLY's dissent analogizes "entering" and "alighting," concluding that "[i]f opening a vehicle door is part of the entering process, it follows that closing a door can be and usually is part of the alighting process." *Post* at 6. However, "alighting" is neither antonymous to "entering" nor synonymous with "exiting." Therefore, even if opening a door is part of the entering process, *and* even if it follows that closing a door is part of the exiting process, it does *not* follow that closing a door is part of the alighting process.

[2] Contrary to Justice MARILYN KELLY's implication, the foregoing analysis of "alighting" makes plain that merely placing one's "feet outside the vehicle on the ground" does *not* constitute a completion of the alighting process. *Post* at 5. Rather, to complete the process, one must "successfully transfer[] full control of one's movement from reliance upon the vehicle to one's body."

3

on the ground." *Krueger v Lumbermen's Mut Cas Co*, 112 Mich App 511, 515; 316 NW2d 474 (1982).[3]

Based on the foregoing analysis, plaintiff is not entitled to benefits under the no-fault act because her injury did not arise out of the use of a parked vehicle under MCL 500.3106(1). Plaintiff was injured when she slipped and fell on a patch of ice while closing the passenger door of her vehicle. Plaintiff had placed a few personal items in the passenger compartment via the passenger door, stood up, and stepped out of the way of the door when she closed the door and fell. Insofar as she was in contact with the *door* of the vehicle at the time of her injury, she was clearly in contact with the vehicle itself, not with "equipment" mounted thereon. Therefore, her injury was not "a direct result of physical contact with equipment permanently mounted on the vehicle . . . ." MCL 500.3106(1)(b). Further, before her injury, plaintiff had been standing with both feet planted firmly on the ground outside of the vehicle; she was entirely in control of her body's movement, and she was in no way reliant upon the vehicle itself. Therefore, she was not in the process of "alighting from" the vehicle. MCL 500.3106(1)(c). At the time of her injury, plaintiff had already alighted.

---

[3] Justice MARILYN KELLY's dissent correctly points out that the *Krueger* panel declined to provide "'a complete definition'" of "alighting." *Post* at 4, 5 n 6, quoting *Krueger*, 112 Mich App at 515. *Krueger* concluded that "an individual has not finished 'alighting' from a vehicle at least until both feet are planted firmly on the ground," *Krueger*, 112 Mich App at 515, but this distinction supports the position of neither side here because it only describes a *necessary* condition of "alighting," without considering its *sufficiency*. Further, as our analysis indicates, we define "alighting" without reference to *Krueger* and adopt the language "planted firmly" simply to illustrate when "alighting" has typically been accomplished.

4

Because the circumstances of plaintiff's injury are not included in any of the exceptions enumerated in MCL 500.3106(1), defendant is not liable to pay benefits under MCL 500.3105(1). Finally, because defendant did not owe benefits to plaintiff, its refusal to pay them was not unreasonable, and plaintiff is not entitled to attorney fees under MCL 500.3148(1). *Moore v Secura Ins*, 482 Mich 507, 526-527; 759 NW2d 833 (2008).

We reverse the Court of Appeals' judgment and remand this matter to the trial court for further proceedings not inconsistent with this opinion.

Robert P. Young, Jr.
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra

STATE OF MICHIGAN

SUPREME COURT

MONA LISA FRAZIER,

        Plaintiff-Appellee,

v                                        Nos. 142545, 142547

ALLSTATE INSURANCE COMPANY,

        Defendant-Appellant.

---

MARILYN KELLY, J. (*dissenting*).

I dissent from the majority's decision to reverse the judgment of the Court of Appeals. In my view, plaintiff was "alighting" from her vehicle within the meaning of MCL 500.3106(1)(c) when she was injured. Thus, the trial court correctly denied defendant's motion for a directed verdict on this issue. Because the Court of Appeals properly affirmed that decision, I would deny defendant's application for leave to appeal.

As correctly noted by the majority, the issue in this case is whether defendant is liable to plaintiff for personal protection insurance benefits under the no-fault act.[1] MCL 500.3105(1) provides that an insurer must pay its insured's expenses incurred for accidental injuries arising out of the ownership, operation, or use of a motor vehicle. However, if injuries occur when a vehicle is parked, the insurer is liable in only three situations: (1) when the vehicle was parked in such a way as to cause unreasonable risk of the injury, (2) when the injury was a direct result of physical contact with equipment

---

[1] MCL 500.3101 *et seq.*

permanently mounted on the vehicle, or (3) when the injury was sustained while the insured was occupying, entering into, or alighting from the vehicle.[2]

In this case, there was sufficient evidence from which a reasonable juror could conclude that plaintiff satisfied the second exception. A jury could have concluded that plaintiff was alighting from her vehicle when she was injured. Evidence of this was produced during the direct examination of plaintiff:

> *Q*. So you left your apartment, you headed to your car, then what happened?
>
> *A*. I opened up my passenger door to put my coffee mug, purse and work bag in there, stepped aside to close the car door and that's when I fell.
>
> *Q*. What were you doing when you fell specifically?
>
> *A*. I was closing the car door.
>
> *Q*. Were you touching the car door?
>
> *A*. Absolutely.
>
> *Q*. Are you sure about that?
>
> *A*. Positive.

Plaintiff also described her accident on cross-examination:

> *Q*. As you approached your car, what were you carrying?
>
> *A*. I was carrying a purse, coffee mug and a work bag.
>
> *Q*. Did you have your keys on you?
>
> *A*. Yes, I did.
>
> *Q*. What hand were your keys in?

---

[2] See MCL 500.3106(1)(a), (b), and (c).

*A.* My left hand.

*Q.* What did you do next?

*A.* I opened the car door.

*Q.* Which hand did you open the car door with?

*A.* My right hand.

*Q.* Then what did you do?

*A.* I put my book bag, my purse and my coffe [sic] mug into my vehicle.

*Q.* At that point did you come back out of the vehicle?

*A.* Yes, I did.

*Q.* So you were completely out of the vehicle at that point?

*A.* Yes.

*Q.* Feet were on the ground?

*A.* Yes, they were.

*Q.* What happened next?

*A.* I stepped out of the way—

*Q.* When you say stepped out of the way, what do you mean?

*A.* I stepped out of the way to give my door room to close.

*Q.* So when you were positioned—where were you positioned along the side of the car?

*A.* Far enough away to shut my door.

*Q.* Kind of right where the door would end up shutting? You know, where the door meets the actual car, right at the end of the door?

*A.* You know, a body's length away from that. I didn't want to shut the door on myself.

\* \* \*

3

*Q.* So your shoulders—your back was to the car then, right?

*A.* Exactly.

*Q.* What hand did you shut your door with?

*A.* My left hand.

*Q.* So your back—the car is behind you, right?

*A.* Correct.

*Q.* You're shutting the door with your left hand?

*A.* Right.

*Q.* Now, then what happened?

*A.* Then I fell.

In *Krueger v Lumbermen's Mut Cas Co*,[3] the Court of Appeals considered the meaning of the statutory phrase "alighting from the vehicle" in MCL 500.3106(1)(c). The Court noted that there is no statutory definition of the term "alighting" and that there was no caselaw on point. It nonetheless concluded that, "[a]lthough it is unnecessary to attempt a complete definition of the term at this time, we are convinced that an individual has not finished 'alighting' from a vehicle *at least* until both feet are planted firmly on the ground."[4]

The majority selectively quotes *Krueger*, claiming the case establishes that the alighting process is typically finished when "'both feet are planted firmly on the ground.'"[5] The majority then summarily concludes that because plaintiff's feet were on

---

[3] *Krueger v Lumbermen's Mut Cas Co*, 112 Mich App 511; 316 NW2d 474 (1982).

[4] *Id*. at 515 (emphasis added).

[5] *Ante* at ___, quoting *Krueger*, 112 Mich App at 515.

the ground outside her vehicle, she had already completed the alighting process when she fell. Therefore, it reasons, her injuries do not fall within the scope of MCL 500.3106(1)(c).

As noted, *Krueger*'s holding is not as straightforward as the majority posits. Rather, a careful reading reveals that *Krueger* held that alighting from a vehicle extends *at least* to the point at which a person has both feet on the ground. This is consistent with the dictionary's definition of "alight" as to "descend from a vehicle, etc." and "to settle or stay after descending; come to rest."[6]

It follows that alighting from a vehicle is a process that may or may not be complete when a person has both feet on the ground.[7] Indeed, as the Court of Appeals noted, a person could be nearly completely inside a vehicle, yet have placed his or her feet outside the vehicle on the ground. That person could not be said to have alighted. *Krueger*'s holding makes perfect sense given that no temporal limitation on the alighting process is found in the statutory language. And it is also consistent with the underlying policy of the parked-motor-vehicle exclusion of MCL 500.3106(1): to ensure that an

---

[6] *Random House Webster's College Dictionary* (2001).

[7] See also *Burks v Kimbrough*, unpublished opinion per curiam of the Court of Appeals, issued August 4, 2009 (Docket No. 282229), p 3 ("[W]e decline [the defendant's] invitation to interpret *Krueger* as creating a bright-line rule precluding coverage under [MCL 500.3106(1)(c)] whenever a claimant has 'two feet . . . planted firmly on the ground.' As we have observed, this Court in *Krueger* expressly refrained from 'attempt[ing] a complete definition' of the term 'alighting' and explained only that the process was incomplete '*at least*' until both feet firmly contacted the ground.").

5

injury that is covered by the no-fault act involves the use of the parked motor vehicle as a motor vehicle.[8]

Similarly, in *Hunt v Citizens Ins Co*,[9] the Court of Appeals recognized that an individual may have both feet on the ground while in the process of entering—and, by analogy, alighting from—a vehicle. The Court expressly held that an injury sustained during that process may be compensable under the no-fault act.[10] Likewise, in *Teman v Transamerica Ins Co*,[11] the Court of Appeals held that opening a vehicle door is part of the process of entering a vehicle for purposes of MCL 500.3106(1)(c). If opening a vehicle door is part of the entering process, it follows that closing a door can be and usually is part of the alighting process.

In this case, plaintiff testified that before she fell, she had partly entered her car to place her mug, purse, and work bag inside. She was completing the act of alighting from the car by shutting the door when she fell. It appears that plaintiff's efforts to close her car door caused her feet to slide out from underneath her on the icy parking lot. She could not have completed the process of alighting from the vehicle and moved to the driver's side without closing the passenger door. If she had fallen while walking to the driver's side, it could not be said that she was hurt while entering or alighting from the

---

[8] See *Putkamer v Transamerica Ins Corp of America*, 454 Mich 626, 633; 563 NW2d 683 (1997).

[9] *Hunt v Citizens Ins Co*, 183 Mich App 660; 455 NW2d 384 (1990).

[10] *Id*. at 664.

[11] *Teman v Transamerica Ins Co of Mich*, 123 Mich App 262, 265; 333 NW2d 244 (1983).

6

vehicle. By contrast, opening or closing the car door is a function of entering or alighting from the vehicle.

There was sufficient evidence for the jury to have concluded as it did that plaintiff was alighting from her vehicle when she was injured and that she is entitled to no-fault benefits. The majority misreads and ignores the long-established precedent of *Krueger* and its progeny when it concludes that the alighting process is complete whenever a person's feet are on the ground.

For these reasons, I dissent from the decision to reverse the judgment of the Court of Appeals and would deny defendant's application for leave to appeal.

Marilyn Kelly
Michael F. Cavanagh

7

S T A T E   O F   M I C H I G A N

SUPREME COURT

MONA LISA FRAZIER,

      Plaintiff-Appellee,

v                                       No. 142545, 142547

ALLSTATE INSURANCE COMPANY,

      Defendant-Appellant.

_____

HATHAWAY, J. (*dissenting*).

Leave to appeal was not granted in this case. Rather, oral argument on defendant's application for leave to appeal was heard in order to determine whether this Court should grant leave to appeal, deny leave to appeal, or take other peremptory action. Having heard oral argument, I would deny leave to appeal because I am not persuaded that this Court should take any further action in this unique, fact-specific case that should have no precedential value.

                                 Diane M. Hathaway