# STATE OF MICHIGAN

# COURT OF APPEALS

SHANTE HOOKS,

          Plaintiff-Appellant,

v

LORENZO FERGUSON, M.D., and ST. JOHN
HEALTH d/b/a ST. JOHN PROVIDENCE
HOSPITAL,

          Defendants-Appellees.

UNPUBLISHED
January 5, 2016

No. 322872
Oakland Circuit Court
LC No. 2013-132522-NH

Before: STEPHENS, P.J., and CAVANAGH and MURRAY, JJ.

PER CURIAM.

In this medical malpractice case, plaintiff appeals as of right an order granting defendants' motions for summary disposition entered after the trial court struck plaintiff's expert witness. We reverse.

During plaintiff's laparoscopic cholecystectomy surgical procedure, clips used to close the cystic duct to the gallbladder were improperly placed and blocked the common bile duct, necessitating a second surgery and extensive medical treatment. Subsequently, plaintiff sued defendants for medical malpractice, alleging in pertinent part that defendant Lorenzo Ferguson breached the standard of care by not recognizing that the surgery had been performed improperly. Plaintiff's expert, Leonard F. Milewski, M.D., attested to the same in his affidavit of merit.

After taking Dr. Milewski's deposition, defendants filed motions to strike Dr. Milewski as an expert witness and for summary disposition under MCR 2.116(C)(8) and (C)(10). Defendants argued that Dr. Milewski's opinion was tantamount to a "negligence per se" standard because he stated that injury to the common bile duct during a laparoscopic cholecystectomy is always due to negligence. The trial court accepted defendants' argument and struck Dr. Milewski as an expert witness. The court also held that Dr. Milewski failed to meet "every single factor that one looks at in connection with the statutory requirements of [MCL 600.]2955."

On appeal, plaintiff argues that the trial court abused its discretion when it struck her expert witness, which led to the erroneous decision to grant defendants' motion for summary disposition. We agree.

-1-

A trial court's decision regarding whether to admit expert witness testimony is reviewed for an abuse of discretion. *Craig v Oakwood Hosp*, 471 Mich 67, 76; 684 NW2d 296 (2004). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Moore v Secura Ins*, 482 Mich 507, 516; 759 NW2d 833 (2008). A trial court's decision to grant a motion for summary disposition under MCR 2.116(C)(8) and (C)(10) is reviewed de novo. See *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint and should only be granted where the claims are clearly unenforceable as a matter of law. *Id*. at 119. A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint and should be granted only where no genuine issue of material fact is established and the moving party is entitled to judgment as a matter of law. *Id*. at 120.

We conclude that the trial court abused its discretion when it struck Dr. Milewski as an expert witness. Dr. Milewski is a reliable expert witness and is able to testify regarding the standard of care in a medical malpractice case involving laparoscopic cholecystectomy surgery.

"In a medical malpractice case, the plaintiff must establish: (1) the applicable standard of care, (2) breach of that standard of care by the defendant, (3) injury, and (4) proximate causation between the alleged breach and the injury." *Woodard v Custer*, 473 Mich 1, 6; 702 NW2d 522 (2005) (citation omitted). "Generally, expert testimony is required in medical malpractice cases." *Id.*

The admissibility of expert testimony in a medical malpractice case is governed by MRE 702 and MCL 600.2955. MRE 702 states:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

MCL 600.2955 states:

> (1) In an action for the death of a person or for injury to a person or property, a scientific opinion rendered by an otherwise qualified expert is not admissible unless the court determines that the opinion is reliable and will assist the trier of fact. In making that determination, the court shall examine the opinion and the basis for the opinion, which basis includes the facts, technique, methodology, and reasoning relied on by the expert, and shall consider all of the following factors:
>
> (a) Whether the opinion and its basis have been subjected to scientific testing and replication.
>
> (b) Whether the opinion and its basis have been subjected to peer review publication.

(c) The existence and maintenance of generally accepted standards governing the application and interpretation of a methodology or technique and whether the opinion and its basis are consistent with those standards.

(d) The known or potential error rate of the opinion and its basis.

(e) The degree to which the opinion and its basis are generally accepted within the relevant expert community. As used in this subdivision, "relevant expert community" means individuals who are knowledgeable in the field of study and are gainfully employed applying that knowledge on the free market.

(f) Whether the basis for the opinion is reliable and whether experts in that field would rely on the same basis to reach the type of opinion being proffered.

(g) Whether the opinion or methodology is relied upon by experts outside of the context of litigation.

We disagree with the trial court's conclusion that Dr. Milewski's expert testimony must be excluded because it states a "negligence per se" standard. In reaching that conclusion, the trial court relied on *Woodard*, 473 Mich at 8, quoting *Jones v Porretta*, 428 Mich 132, 154; 405 NW2d 863 (1987), for the proposition that "[i]n a normal professional negligence case, a bad result, of itself, is not evidence of negligence sufficient to raise an issue for the jury." However, the discussion in both *Jones* and *Woodard* was whether circumstantial evidence is enough to raise an inference of negligence *without* expert testimony. *Woodard*, 473 Mich at 6; *Jones*, 428 Mich at 150. Here, there is expert testimony so these cases are inapposite.

In this case, Dr. Milewski testified that biliary duct injury during a laparoscopic cholecystectomy "shouldn't happen in the absence of negligence . . . because there are numerous safeguards that we have when performing the procedure to ensure that we do not cause injury to the biliary tree." Dr. Milewski was asked, "You believe all bile duct injuries are the result of malpractice?" and he answered, "I do." When asked how exactly the surgeons in this case violated the standard of care, Dr. Milewski answered:

They weren't watching where the clip was. You have to see the entire clip just like you have to see the structure that you're clipping; you have to see where the ends of those clips are. You need to know that you are not injuring another structure.

It is a very busy area up in the biliary tree. It is absolutely imperative to use every precaution you can to prevent an injury. These can be devastating injuries.

When asked what the standard of care was, Dr. Milewski answered, "What a reasonable physician with similar training and experience would do in a similar set of circumstances."

After review of Dr. Milewski's entire deposition testimony, his opinion regarding this case is as follows: There can be no injury to the common bile duct during a laparoscopic cholecystectomy absent negligence because the standard of care requires the surgeon to fully

visualize the cystic duct by dissecting it out from the other structures. If the surgeon cannot see that the cystic duct and only the cystic duct is clipped, the surgeon must perform an "intraoperative cholangiogram" or convert to an open procedure. Because of the potentially devastating results, the surgeon must be able to identify the cystic duct without a doubt. A clip would never be placed on the common bile duct absent negligence because of these safeguards.

This is not a "negligence per se" standard. Dr. Milewski's opinion is not that the surgeons were negligent merely because plaintiff was injured, but rather that the surgeons must have been negligent because a clip does not end up on the common bile duct unless someone is not using due care by following the stated precautions.

Regarding the trial court's conclusion that all the factors under MCL 600.2955 were not met, the trial court abused its discretion under the same reasoning set forth in our recent holding in *Elher v Misra*, 308 Mich App 276; 870 NW2d 335 (2014). The facts of *Elher* are on all fours with this case and were stated in the opinion as follows:

> The underlying facts are simple. Defendant Dwijen Misra, Jr., a general surgeon, clipped the wrong bile duct during plaintiff Paulette Elher's laparoscopic gallbladder surgery. Plaintiff's expert, a general surgeon with extensive experience in the procedure, testified that clipping a patient's common bile duct during an otherwise uncomplicated operation is a breach of the standard of care. Defendants' expert opined that bile duct injuries frequently occur even absent professional negligence. Defendants insisted that plaintiff's expert's testimony did not qualify as reliable under MRE 702 because the expert could not specifically identify any peer-reviewed literature or other physicians who supported his viewpoint. The trial court agreed with defendants, excluded plaintiff's expert's testimony, and dismissed the case. [*Id.* at 278.]

This Court reversed the trial court and carefully analyzed each of the factors under MCL 600.2955. The Court stated: "[Plaintiff's expert]'s qualifications—his 'knowledge, skill, experience, training, [and] education'—are not in dispute. Given the number of laparoscopic gallbladder surgeries he has performed (more than 2,000) and his board certification as a general surgeon, he is qualified to express opinions regarding the standard of care." *Id.* at 292. The same analysis applies with equal force to Dr. Milewski. Dr. Milewski is an experienced surgeon who has performed more than 2500 laparoscopic gallbladder surgeries in his 25 year career.

The *Elher* Court also stated:

> Nor has the "fit" of [plaintiff's expert]'s opinions to the case facts precipitated any "analytical gap" debate. In fact, the parties agree about the anatomy of the bile duct system, the manner in which the surgery is typically performed, the methods available to prevent injury, the consequences of erroneously severing the common bile duct, and that Dr. Misra believed he had an unobstructed, clear view of the surgical site. Their opinions diverge only as to whether, in Elher's case, Dr. Misra violated the standard of care by clipping the common bile duct. The question before us is whether a jury should hear [plaintiff's expert]'s view. [*Id.* at 293 (footnote omitted).]

The same could be said for this case. The facts are straightforward, and the only real issue that will be presented at trial will be whether clipping the common bile duct in this case constituted negligence.

Regarding the "testing and replication" factor under MCL 600.2955, the *Elher* Court stated:

> [N]o testing or "replication" underlies either side's expert opinions. And we fail to understand how standard-of-care opinions such as [plaintiff's expert]'s could ever be tested or replicated. How does one scientifically "test" whether severing the wrong bile duct is a breach of the standard of care? Physical recreation or reenactment of Elher's surgery is neither feasible nor helpful; some conclusions simply defy measurement or verification through randomized clinical trials. The Massachusetts Supreme Court has similarly concluded that "testing" lacks relevance in the standard-of-care context: "[B]ecause the standard of care is determined by the care customarily provided by other physicians, it need not be scientifically tested or proven effective: what the average qualified physician would do in a particular situation *is* the standard of care." *Palandjian v Foster*, 446 Mass 100, 105, 842 NE2d 916 (2006). Because [plaintiff's expert]'s opinion simply does not implicate any possible testing or replication, the trial court abused its discretion by using this factor to exclude his testimony. [*Id*. at 296-297.]

By the same logic, the testing and replication factor does not apply to this case.

The *Elher* Court also held that it was an abuse of discretion for the trial court to exclude the plaintiff's expert's opinion on the grounds that it lacked peer-review and publication. *Id*. at 297-301. Similar to this case, in *Elher*, the defense submitted a published editorial opinion from a medical journal that opined that injury to the common bile duct during a laparoscopic cholecystectomy procedure was not a breach of the standard of care. *Id*. at 282-283. In this case, defendants proffered a 2009 editorial opinion published in the American Journal of Surgery that opined that bile duct injury during a laparoscopic cholecystectomy procedure is an "inherent risk" of the procedure and not "practice below the standard." This is not a scientific article and merely represents the views of one doctor in the field. As the *Elher* Court points out, that there are editorial opinions published on this subject supports plaintiff's argument because it shows that there is a genuine debate in the medical community regarding whether these types of injuries are the result of negligence. *Id*. at 301.

Regarding "general acceptance" among other surgeons, the *Elher* Court stated:

> [Plaintiff's expert] grounded his opinions in his own experience and training, and denied any awareness of whether his viewpoint was generally shared by other general surgeons. Aside from polling board-certified general surgeons on the question (which would raise a host of vexing methodology issues), we are unpersuaded that "widespread acceptance" of a standard-of-care statement can be found. Moreover, the record reflects no disagreement about the standard of care in this case: a surgeon performing laparoscopic gallbladder surgery must strive to avoid injury to the common bile duct. This standard remains unchallenged by

-5-

defendants. The parties diverge only as to the circumstances that give rise to a *breach* of that standard.

>The dissent blurs this critical distinction. According to our dissenting colleague, "Defendants maintain that a common-bile-duct injury is a known complication of laparoscopic cholecystectomies that may occur even when" the procedure has been executed "in a reasonable manner consistent with the governing standard of care." In contrast, the dissent asserts, [plaintiff's expert] "has opined that, in the absence of scarring or inflammation, the standard of care requires a physician performing a laparoscopic cholecystectomy not to clip the common bile duct under any circumstance." This comparison conflates the standard of care with the actions or inactions constituting a *breach* of that standard. The record evidence demonstrates that the parties agree that the standard of care is precisely what [plaintiff's expert] said it was: operating surgeons must endeavor to carefully identify the bile ducts to avoid cutting or clipping the common bile duct. Defendants' experts never challenged this proposition. Rather, the experts dispute whether a physician deviates from the care expected of a reasonable physician when, despite clear visibility of the anatomy, the physician clips the common bile duct. [*Id.* at 303-304.]

The dispute is identical in this case. Dr. Milewski's theory is that the plaintiff's common bile duct was clipped because her surgeon failed to exercise due care to ensure that it was not clipped. Defendants argue that the surgeons exercised due care and that the bile duct became clipped because it is an inherent risk. Just like in *Elher*, the parties agree that the standard of care is what a reasonable surgeon would do under similar circumstances. And, like in *Elher*, the real dispute is whether clipping the common bile duct under the circumstances of this case constitutes a breach of that standard.

Defendants argue that *Elher* does not control because it was "incorrectly decided." *Elher* is a published decision and is, therefore, binding precedent. MCR 7.215. Regardless, defendants' argument fails on the merits. Defendants assert that the *Elher* majority ignored the mandate in *Edry v Adelman*, 486 Mich 634, 640; 786 NW2d 567 (2010), that courts consider the "lack of supporting literature" as "an important factor in determining the admissibility of expert witness testimony." However, *Edry* states that lack of supporting literature is not "dispositive." *Id.* *Elher* does not ignore *Edry* but rather examines a factual circumstance where the idea of peer-reviewed literature testing and replication simply do not make sense.

In *Edry*, the cause of action was based on the theory that a failure to diagnose the plaintiff's breast cancer negatively impacted her chances of survival. *Id.* at 637. The plaintiff's expert testified that the patient's chances of survival would have been 95% had the proper diagnosis been made at the appropriate time. *Id.* This type of scientific opinion is subject to testing and replication. A percentage survival rate under a certain set of circumstances is something that is generated only by scientific study. Experts will disagree and the central question will become which expert's opinion is based on sound scientific principles. In a case like *Edry* the idea of peer-reviewed literature becomes extremely important because it lets the court know that scientists in the relevant field have examined the methodology and the soundness of the researcher's conclusions. In cases like this one and like *Elher*, peer-reviewed

-6-

literature has little value. See *id*. at 641. The specific rate of bile duct injury during a laparoscopic cholecystectomy is not the issue. The only issue is whether Dr. Milewski is sufficiently reliable to testify regarding the standard of care in laparoscopic cholecystectomy procedures. As discussed above, having performed 2500 laparoscopic cholecystectomy procedures and being a board certified general surgeon makes Dr. Milewski qualified to give an opinion as to what is required of a reasonable surgeon under similar circumstances. As the *Elher* Court points out, this is not something than can be subject to testing and replication—this *is* the standard of care. *Elher*, 308 Mich App at 305-306.

Accordingly, the trial court abused its discretion by striking Dr. Milewski as an expert witness and erred in granting defendants' motions for summary disposition.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.


/s/ Cynthia Diane Stephens
/s/ Mark J. Cavanagh