# STATE OF MICHIGAN

# COURT OF APPEALS

BRENDA HOOGENSTYN,

      Plaintiff-Appellant,

v

ORTHOPAEDIC ASSOCIATES OF GRAND
RAPIDS, PC, and JULIAN KUZ, M.D.,

      Defendants-Appellees,

and

WALKER SURGICAL CENTER, LLC, and
MICHAEL BURTON,

      Defendants.

UNPUBLISHED
June 20, 2017

No. 332063
Kent Circuit Court
LC No. 14-010008-NH

Before: SWARTZLE, P.J., and SAAD and O'CONNELL, JJ.

PER CURIAM.

In this medical malpractice action, plaintiff appeals the trial court's order that dismissed the action with prejudice based on plaintiff's failure to disclose an expert witness who was qualified under MCL 600.2169(1)(a) to testify about the applicable standard of care. For the reasons provided below, we affirm.

This case arises out of plaintiff's shoulder surgery and subsequent stroke. In April 2012, plaintiff underwent rotator cuff surgery at the Walker Surgical Center. The surgery was performed by defendant Dr. Julian Kuz, who is board certified in orthopedic surgery and holds a certificate of additional qualification (CAQ) in surgery of the hand. Plaintiff apparently suffered a stroke at some point after the surgery. Plaintiff essentially alleged that Dr. Kuz should have

-1-

prescribed anticoagulation medication, such as aspirin, as part of the postoperative care to prevent the development of blood clots.[1]

During the proceedings below, defendants moved the trial court to strike plaintiff's sole standard of care expert witness, Dr. Richard Matza, who was board certified in orthopedic surgery but did not hold a CAQ in surgery of the hand. Defendants argued that Dr. Matza could not testify because such a standard-of-care witness must have the same CAQ as the defendant. The trial court ordered that Dr. Matza was precluded from testifying about the applicable standard of care, but the court allowed plaintiff additional time to disclose a qualified substitute expert who held the same CAQ as Dr. Kuz. When plaintiff failed to produce such an expert, the trial court dismissed the case with prejudice.

On appeal, plaintiff argues that the trial court improperly ruled that Dr. Matza was not qualified under MCL 600.2169(1)(a). We disagree.

An appellate court "reviews a trial court's rulings concerning the qualifications of proposed expert witnesses to testify for an abuse of discretion." *Woodard v Custer*, 476 Mich 545, 557; 719 NW2d 842 (2006). This Court also "review[s] a dismissal of a case for failure to comply with a court order for an abuse of discretion." *Woods v SLB Prop Mgt, LLC*, 277 Mich App 622, 630; 750 NW2d 228 (2008); see also *Woodard*, 476 Mich at 577. Appellate review of a trial court's determination of the "one most relevant specialty" for purposes of MCL 600.2169(1) is also for abuse of discretion. *Woodard*, 476 Mich at 576. "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Moore v Secura Ins*, 482 Mich 507, 516; 759 NW2d 833 (2008).

MCL 600.2169(1)(a) provides:

(1) In an action alleging medical malpractice, a person shall not give expert testimony on the appropriate standard of practice or care unless the person is licensed as a health professional in this state or another state and meets the following criteria:

(a) If the party against whom or on whose behalf the testimony is offered is a specialist, specializes at the time of the occurrence that is the basis for the action in the same specialty as the party against whom or on whose behalf the testimony is offered. However, if the party against whom or on whose behalf the testimony is offered is a specialist who is board certified, the expert witness must be a specialist who is board certified in that specialty.

---

[1] Plaintiff also alleged that Dr. Michael Burton was negligent under the same theory in performing his role in plaintiff's surgery and treatment, and plaintiff alleged that Orthopaedic Associates and Walker Surgical Center were vicariously liable because Dr. Kuz and Dr. Burton were employees, agents, servants, or ostensible agents of those entities. Both Walker Surgical Center and Dr. Burton were subsequently dismissed with prejudice based on the parties' stipulation.

In *Woodard*, the Michigan Supreme Court construed MCL 600.2169(1) and explained what was required for a plaintiff's expert witness to be qualified under § 2169 to testify about the appropriate standard of care:

> If a defendant physician is a specialist, the plaintiff's expert witness must have specialized in the same specialty as the defendant physician at the time of the occurrence that is the basis for the action. *If a defendant physician specializes in a subspecialty, the plaintiff's expert witness must have specialized in the same subspecialty as the defendant physician at the time of the occurrence that is the basis for the action.* If the defendant physician is a specialist who is board certified, the expert witness must be a specialist who is board certified in that specialty. *If the defendant physician has received a certificate of special qualifications, the plaintiff's expert witness must have obtained the same certificate of special qualifications.* However, under § 2169(1)(a), *only the one most relevant specialty or subspecialty must match; and only the one most relevant board certificate or certificate of special qualifications must match.* [*Woodard*, 476 Mich at 578-579 (emphasis added).]

As particularly relevant to the instant case, the *Woodard* Court noted that "a certificate of special qualifications" is equivalent to a "certificate[] of added qualification." *Id*. at 565 n 9.

Here, Dr. Kuz was board certified in the field of orthopedic surgery with a CAQ in "surgery of the hand." While plaintiff's expert, Dr. Matza, was board certified in orthopedic surgery, he did not have a CAQ in "surgery of the hand." The primary issue in the instant case is whether this CAQ is a "relevant" subspecialty, i.e., does the scope of the term "surgery of the hand" pertain to the shoulder, such that Dr. Kuz was practicing in this subspecialty rather than the general specialty of orthopedic surgery.

We reject plaintiff's view that the title of the CAQ alone should be taken at face value without considering the relevant technical meaning of the term "surgery of the hand." The record evidence demonstrates that "surgery of the hand" or "hand surgery" has a particular, specialized meaning within this field, and courts may consider the specialized meaning of medical terms in medical malpractice cases. See *id*. at 561. There is substantial evidence on this record that the scope of the CAQ in surgery of the hand includes surgeries on all areas of the "upper extremity," which includes the area from "the fingertips to the shoulder." Significantly, there was evidence that the American Board of Orthopaedic Surgery defines hand surgery as "the special field of medicine that includes the investigation, preservation, and restoration by medical surgical, surgical and rehabilitative means of *all structures of the upper extremity* directly affecting the form and function of the hand." (Emphasis added.) There was further evidence that the shoulder is an integral link of the upper extremity that allows the hand to be positioned in various positions in relation to the trunk and that the nerves and arteries that supply the hand are part of the shoulder anatomy as well. The record also includes evidence that the training and examinations required to obtain and recertify the CAQ address the entire upper extremity. Importantly, plaintiff did not offer any evidence to rebut the evidence submitted by defendants that the scope of the CAQ in surgery of the hand includes the entire upper extremity from fingertips to shoulder. Therefore, because the uncontested evidence demonstrates that surgery of

the hand is a technical term that applies to surgery involving the entire upper extremity, Dr. Kuz's subspecialty of hand surgery is relevant in this case.

Furthermore, although plaintiff's claim centered on the allegation that she should have been prescribed anticoagulation medication, such as aspirin, during the postoperative period in order to prevent blood clots, there was substantial evidence that the risk of blood clots is much lower in surgeries on the upper extremity than in surgeries on other areas of the body and that hand and upper extremity specialists treat this aspect of postoperative care accordingly. The nature of plaintiff's allegations does not change the fact that Dr. Kuz was practicing in his subspecialty during plaintiff's shoulder surgery and postoperative care. Therefore, the trial court did not abuse its discretion when it concluded that Dr. Kuz's subspecialty in hand surgery was the one most relevant specialty in the matter.

Accordingly, because there is no dispute that Dr. Matza did not possess the same hand surgery board certification that Dr. Kuz had, the trial court did not err when it found that Dr. Matza was not qualified under MCL 600.2169(1)(a) to testify regarding the applicable standard of care. Consequently, the trial court did not abuse its discretion when it dismissed the case with prejudice when plaintiff failed to follow its order to disclose a qualified substitute expert to testify about the applicable standard of care.

Affirmed. Appellees, as the prevailing parties, may tax costs pursuant to MCR 7.219.

/s/ Brock A. Swartzle
/s/ Henry William Saad
/s/ Peter D. O'Connell

-4-