*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SPINE SPECIALISTS OF MICHIGAN, PC,

Plaintiff-Appellee,

v

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

Defendant-Appellant.

UNPUBLISHED
February 11, 2026
1:59 PM

No. 367653
Oakland Circuit Court
LC No. 2021-186036-NF

SPINE SPECIALISTS OF MICHIGAN, PC,

Plaintiff-Appellant,

v

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

Defendant-Appellee.

No. 371964
Oakland Circuit Court
LC No. 2021-186036-NF

Before: REDFORD, P.J., and FEENEY and BAZZI, JJ.

PER CURIAM.

These appeals[1] involve a dispute over the applicability of the fee schedule delineated under MCL 500.3157 for medical services provided pursuant to the no-fault act, MCL 500.3101 *et seq.*, and the imposition of taxable costs and attorney fees. In Docket No. 367653, defendant, State Farm Mutual Automobile Company, appeals as of right the judgment issued in favor of plaintiff,

---

[1] These appeals were consolidated to advance the efficient administration of the appellate process. *Spine Specialists of Michigan PC v State Farm Auto Insurance Co*, unpublished order of the Court of Appeals, entered March 19, 2025 (Docket Nos. 367653 and 371964).

-1-

Spine Specialists of Michigan, PC, in the amount of $444,053.28. Defendant argues that the trial court abused its discretion by failing to apply the fee schedule iterated under MCL 500.3157 to the costs awarded by the jury for medical services plaintiff administered after July 1, 2021. In Docket No. 371964, plaintiff appeals as of right the trial court's opinion and order granting in part and denying in part plaintiff's renewed motion for taxable costs and attorney fees. Plaintiff further contests the trial court's order partially granting its motion for reconsideration of the issued taxable costs and attorney fees. Plaintiff argues that the trial court erred by failing to award plaintiff the entirety of taxable costs and attorney fees requested. For the reasons set forth in this opinion, we affirm in part, vacate in part, and remand for further proceedings.

## I. BASIC FACTS AND PROCEDURAL HISTORY

On January 28, 2021, plaintiff filed a complaint alleging that it had provided medical services to Orlando Benjamin, an individual insured by defendant, for injuries he sustained after his involvement in a motor vehicle accident on September 23, 2019, but defendant failed to properly compensate plaintiff for its administered treatment in accordance with the no-fault act. Defendant filed an answer generally denying the allegations and asserting as affirmative defenses, in part, that "plaintiff's claims for 'outstanding charges' are not recoverable as a matter of law," and that plaintiff "failed to provide evidence that its 'outstanding charges' are reasonable."

On February 15, 2023, plaintiff moved in limine to "preclude reference to and arguments regarding MCL 500.3157's 'fee schedule', governmental payors, and 'other insurance,' " contending, "It is anticipated that Defendant will attempt to make arguments referencing, elicit testimony concerning, or otherwise seek to introduce evidence of the 'fee schedule' contained in amended MCL 500.3157, which took effect on July 1, 2021, and other amendments to the No-Fault Act." Plaintiff argued that the fee schedule delineated under MCL 500.3157 had "no bearing on the issues to be determined by the jury in this matter," specifically the reasonableness of plaintiff's charges for medical services; rather, the presentation of the fee schedule would confuse the jury and be highly prejudicial to plaintiff.

On February 20, 2023, defendant responded that the fee schedule articulated under MCL 500.3157 was pertinent to the underlying matter because "the overwhelming majority" of plaintiff's charges for medical services were incurred after July 1, 2021, and the statute "establishes the cap for a reasonable charge and reimbursement" for such services provided after July 1, 2021. Defendant further asserted that because the jury was tasked with determining the reasonableness of plaintiff's charges as a medical provider, defendant was entitled to argue that the statute's fee schedule was applicable to dates of service after July 1, 2021, such that plaintiff's charges were unreasonable. On February 22, 2023, the trial court entered an order granting in part and denying in part plaintiff's motion in limine stating, "Evidence of the fee schedule shall be precluded for all allowable expenses allegedly incurred prior to July 1, 2021. The fee schedule is relevant and not precluded for alleged allowable expenses resulting from dates of service after July 1, 2021."

On February 22, 2023, plaintiff moved in limine to "preclude defendant from introducing evidence, eliciting testimony, or making arguments contesting the reasonableness of plaintiff's charges for claims incurred after March 15, 2021," the date defendant denied Benjamin's benefits. Plaintiff contended that because defendant did not contest the reasonableness of plaintiff's fees for

medical services provided after March 15, 2021, defendant should be barred from doing so at trial. Defendant responded that (1) it "owes Plaintiff nothing for the benefits at issue, so logic would be defied at trial were the defense to admit evidence about 'reasonableness' of the Plaintiff's post-March 15, 2021 charges which were denied," (2) it was plaintiff's burden to establish the reasonableness of the contested charges, and (3) the court's February 22, 2023 order indicated that plaintiff "cannot preclude the fee schedule for benefits incurred after 7/1/2021." The trial court held a hearing regarding plaintiff's motion in limine on March 1, 2023, and it subsequently issued an order providing:

> IT IS HEREBY ORDERED that Plaintiff's Motion in Limine to Preclude Defendant from Introducing Evidence, Eliciting Testimony, or Making Arguments Contesting the Reasonableness of Plaintiffs Charges for Claims Incurred After March 15, 2021 is granted for the reasons stated on the record.

> IT IS FURTHER ORDERED that Defendant is precluded from introducing evidence, eliciting testimony, or making arguments contesting the reasonableness of Plaintiffs charges for claims incurred after March 15, 2021, subject to the Court's prior ruling on Plaintiffs Motion in Limine to Preclude Reference to and Arguments Regarding MCL 500.3157's "Fee Schedule", Governmental Payors, and "Other Insurance".

Following the release of the jury on the first day of trial, the parties' counsel disputed the admissibility of evidence pertaining to the fee schedule provided under MCL 500.3157, in light of the trial court's previous rulings on plaintiff's motions in limine. When the trial court questioned whether defense counsel had a witness to testify regarding the fee schedule, the following exchange occurred:

> *The Court*: Or do you even know some—do you even have someone who's going to say, gee, the fee schedule was in effect. This is what they would pay.

> [*Defense Counsel*]: Well, you can go to the website.

> [*Plaintiff's Counsel*]: Well, I—

> [*Defense Counsel*]: And you can do that. It's—everyone can do it. Everyone—

> *The Court*: Who's going to do it?

> [*Defense Counsel*]: Who's going to do it?

> *The Court*: Yeah.

> [*Defense Counsel*]: Anybody can do it.

> *The Court*: No—

> [*Defense Counsel*]: Jerri Ellis can do it.

[*Plaintiff's Counsel*]: I don't think Ms. Ellis should be allowed to do it here in trial. That was the basis of my motion. Because in her discovery deposition, she said I don't know where the data comes from. I don't know how the pricing works under the fee schedule. All of her testimony on that point is included in my reasonableness motion, which Your Honor granted.

Because of the confusion of the parties' respective counsel and the trial court regarding the pertinence of the fee schedule under MCL 500.3157 to services provided by plaintiff after July 1, 2021, as the alleged "cut off in this case was March 15th of 2021" concerning the reasonableness of plaintiff's charges, the trial court determined it would take the matter under advisement to allow for review of the record.

During the testimony of Jerri Ellis, a claims specialist employed by defendant, on the fourth day of the trial, the court dismissed the jury and opined the following regarding whether Ellis would be permitted to testify concerning the fee schedule delineated under MCL 500.3157:

[Benjamin's] accident was on September 23rd, 2019 . . . . He was alerted in March of 2021 that his benefits would be discontinued. A fee schedule was enacted in July of 2021. And Mr. Benjamin's surgery was in August of 2021.

And there were various motions in limine filed in this case. And we did go back and look at the tape of one of them. Think that was yesterday morning.

And you know, I'm reluctant to make this more complicated for the jury who's losing their mind right now, but—by introducing information about a fee schedule. But the problem is, and a consistent holding in this court has been that, you know, the fee schedule is some evidence of what—of what's—of what's reasonable, right? And that's—you know, there's a diary, there's all these—you know, all these cases.

But the fee—the fee schedule and there's—there's an order of February 22nd, 2023. Just like, you know, what bandages cost at CVS or—you know, I don't—I don't know what a good example is. There's an order February 22nd, 2023 that that this Court issued saying the fee schedule's relevant and not precluded for alleged allowable expenses resulting from dates of service after July 1st, 2021.

I can't tell you how much I think discussion of a fee schedule is going to confuse the jury, but [sic]. There's also the issue that when she was deposed, Ms. Ellis did not say that she ran the fee schedule. However, she subsequently ran—ran the fee schedule, and I think the plaintiff's counsel was aware that she was potentially going to do that. I think there were motions brought to try and preclude that . . . .

At the—at the moment, I don't know what anybody thinks I can do about this. Because I did rule that the fee schedule is relevant and not precluded. I'm gonna let—I'm gonna let you comment.

-4-

But I—you know, we're—we're trying a case that falls squarely in the middle of the change in the law. So a lot of things are relevant about what's reasonable. And certainly this fee schedule is some evidence. Fee schedule that was enacted a month before the surgery is some evidence of what the reason—reasonable cost was.

I—I think [plaintiff's counsel] is going to say, "Yeah, but they . . .cut off benefits in—in March of 2021, so they didn't come em off [sic] because they said that—that the expenses or the cost—the costs weren't reasonable. They denied it because they say—said they weren't related to the accident."

But then there's a surgery in August of 2021 that—that's cost about a half a million dollars, and I—I don't think that—especially based on the response to the motion, that defense ever waived the issue of whether or not the costs for the surgery were reasonable.

So that is my recollection. I'm gonna let you make a Record . . .if you want. I—I don't know what else I can do.

The parties' counsel proceeded to dispute the implications of the court's pretrial rulings regarding the admissibility of the fee schedule under MCL 500.3157.

Following the parties' arguments, the trial court detailed the history of the parties' respective pretrial motions and the court's resulting orders, noting that the court granted in part and denied in part plaintiff's motion in limine regarding the subject fee schedule, and it further granted plaintiff's motion in limine concerning the reasonableness of plaintiff's charges for claims incurred after March 15, 2021. The court then ruled:

Well, this—this [March 13, 2023] order was—was unopposed and signed by me, but it references the reasons stated on the Record. So it doesn't talk about the August surgery, but it does talk about . . . reasonableness [of] plaintiff's charges for claims incurred after March 15, 2021 for the reasons stated on the Record.

So it talks about reasonableness—reasonableness then, and a fee schedule is referenced, too. But it references the reasons on the Record, but the Record is replete with agreements between defense counsel and plaintiff's counsel that the fee schedule is relevant and admissible with regard to what happened in the surgery in August. I can—the—the tape is in evidence. And plaintiff says, "Yes, the claims representative can explain it." And the plaintiff acknowledges several times that the defendant can discuss the fee schedule.

So the—the order does not exactly mirror what was discussed, but it refers to the Record, which is replete with references to the fee—fee schedule being allowable, especially for the surgery in August that occurred after this fee schedule came into effect in July of 2021 . . . .

> So I'm gonna—I'm going to allow it. All right? Based on the Record. The—the order is not as specific as it—as it should be and I think the defense should have done their own order . . . .

Defense counsel proceeded to question Ellis regarding whether she completed the calculations for the billed services pursuant to MCL 500.3157, to which Ellis responded that the reimbursement rate for medical services provided to Benjamin after July 1, 2021, was "just a little bit lower than [$]20,000," with $170 for each office visit, $16,000 for the neck surgery, and an unspecified amount for the two injections administered.

On the fifth and final day of trial, the parties disputed the proper jury instructions regarding the fee schedule delineated under MCL 500.3157, resulting in the trial court proposing the following:

> All right. We've been grappling with the issue of the fee schedule. And I drafted a proposed jury instruction, which I have to tell you I still think it's too wordy, if we were able to say less, you know. As lawyers we hang on every word in the . . . statute, right? But if we were able to say less about the statute, or simplify what the statute says, that would be helpful. But this was my proposed jury instruction.

> (Undecipherable) "enacted statute indicates that allowable expenses incurred after July 1st, 2021 are subject to the MCL 500.357 fee schedule statute, which provides the relevant part that a physician, hospital, clinic, or other person that renders treatment to an injured person or accidental bodily injury covered by personal protection insurance is not eligible for payment or reimbursement for more than 200 percent of the amount payable to the person for the treatment under Medicare for dates of service after July 1st, 2021 and before July 2nd, 2022.

> "Additionally, a physician, hospital, clinic, or other person that renders treatment to an injured person for accidental bodily injury covered by personal protection insurance is not eligible for payment or reimbursement for more than 195 percent of the amount payable to the person for the treatment or Medicare for dates of services after July 1st, 2021 and before July 2nd, 2023." My intention would be to make the next part a—a new paragraph.

> "The statute is not binding on this case and it does not establish a reasonable rate. It is merely some evidence of the reasonableness of charges. You may consider it as part of your deliberations in addition to other evidence of reasonableness. It's up to you to consider and weigh the evidence and determine what you believe reasonable rate to be."

> Questions, comments, concern, hatred? Love, hatred?

Defense counsel responded, "I accept it." Plaintiff's counsel advanced further suggestions regarding the proper language for the jury instructions, and the parties agreed to add the statement, " 'Medicare dates of service after July 1st, 2021 and before July 2nd, 2022, and 195 percent of the

-6-

amount payable to the person for the treatment under Medicare for dates of service after July 1st, 2021 and before July 2nd, 2023,' " to the instructions.

The trial court ultimately issued the following jury instructions regarding the fee schedule iterated under MCL 500.3157:

> A newly enacted statute indicates that allowable expenses incurred after July 1st, 2021 may be subject to MCL 500.3 to the MCL 500.3157 fee schedule statute, which provides, in relevant part, that a physician, hospital, clinic, or other person that renders treatment to an injured person for accidental bodily injury covered by personal protection insurance may—may not be eligible for payment or reimbursement for more than 200 percent the amount payable to the person for the treatment under Medicare for dates of service after July 1st, 2021, and before July 2nd, 2022.

> And 195 percent of the amount payable to the person for treatment under Medicare for dates of service after July 1st, 2022, and before July 2nd, 2023.

> The statute is *not binding* on this case, and does not establish a reasonable rate. It is merely some evidence of the reasonableness of the charges. You may consider it as part of your deliberations in addition to other evidence of reasonableness. It's up to you to consider and weight the evidence and determine what you believe a reasonable rate to be.

After completing its oration of the jury instructions, the trial court affirmed whether the jury instructions were acceptable, to which defense counsel replied, "Good for the defense." The parties stipulated to the verdict form, and the jury answered as stated below:

## ALLOWABLE EXPENSES

**QUESTION NO. 1:** Were allowable expenses incurred by the Plaintiff arising out of the accident bodily injury sustained by Orlando Benjamin?

(Allowable expenses consist of all reasonable charges for reasonably necessary products, services, and accommodations for Orlando Benjamin's care, recovery, or rehabilitation.)

Answer: Yes. (yes or no)

If your answer is "yes", what is the amount of allowable expense of to the Plaintiff (include only expense not already paid by the Defendant)?

$435141.28

## INTEREST

**QUESTION NO. 2:** Was payment for any of the expenses or losses to which the Plaintiff was entitled overdue?

(Payment for an expense or loss is overdue if it is not paid within 30 days after the Defendant receives reasonable proof of the fact and the amount of the claim. An overdue claim bears interest at the rate of 12 percent per annum from the date the expense or loss became overdue.)

A. Answer: Yes. (yes or no)

B. If you answer is "yes", what is the amount of interest owed to the Plaintiff on overdue benefits (include only interest not already paid by the Defendant)?

$8912.00

Pursuant to the jury verdict, plaintiff was awarded $435,141.28 in allowable expenses for Benjamin's treatment, and $8,912 in penalty interest, for a total of $444,053.28; the jury did not apply the fee schedule to the awarded expenses for treatment rendered after July 1, 2021. After the jury announced its verdict and the jurors were polled, the trial court asked the parties' counsel whether there were any further matters they wished to address, and defense counsel did not voice any concerns.

On July 28, 2023, plaintiff moved to enter judgment on the verdict and for costs and attorney fees, requesting the total amount awarded by the jury, in addition to an award of prevailing party taxable costs and attorney fees. In its supplement to the motion, plaintiff provided a bill of costs and contended that it was entitled to $14,932.80 in taxable, prevailing party costs, and $159,224 in fees for the two attorneys who presided over plaintiff's case. Defendant responded that plaintiff was not entitled to the judgment requested its motion because the fee schedule iterated under MCL 500.3157 was not applied to the services plaintiff provided after July 1, 2021.

On August 4, 2023, defendant moved for a new trial or remittitur under MCR 2.611 and relief from judgment pursuant to MCR 2.612(C)(1), contending that the "jury's verdict is clearly excessive or grossly excessive" because the jury neglected to apply the fee schedule delineated under MCL 500.3157 for any dates of services after July 1, 2021, which comprised at least 67% of all claimed damages at trial. Defendant argued that if the jury had properly administered the fee schedule, the verdict would have been reduced from $435,131.28 to $163,292.84; defendant requested a new trial, or in the alternative, a remittitur from the trial court to reduce the jury verdict to the alleged proper amount. Plaintiff responded that the jury was permitted to award plaintiff "all of the benefits sought at the rate which Plaintiff charged, rather than at a rate which it claims comported with the fee schedule found in MCL 500.3157," and the statute itself did not indicate that a "provider's charge must comport with or is itself limited by the Medicare fee schedule in any way."

On August 9, 2023, the trial court issued an order granting in part and denying in part plaintiff's motion to enter judgment on the verdict and for costs and attorney fees providing, "The arguments made by the Defendant were already considered in pretrial motions and again during the trial. Judgment shall enter in the amount of $444,053.28," and, "The request for attorney's fees is denied without prejudice because the Supplement was not timely filed in accordance with the Michigan Court Rules . . . ." On August 16, 2023, the court entered an order denying defendant's motion for a new trial or remittitur and relief from judgment stating, "The Court finds

that there were no irregularities in the proceeding, the jury's verdict was not clearly or grossly excessive, and the jury's verdict was not against the great weight of the evidence for the reasons argued by the Plaintiff in its response," and, "Defendant has not shown it is entitled to relief from judgment pursuant to MCR 2.612(C)(1)."

On August 23, 2023, plaintiff renewed its motion for taxable costs and attorney fees, contending that it was entitled to $14,932.80 in taxable costs, and $167,405 in attorney fees under MCL 500.3148,[2] which accounted for defendant's unreasonable delay in payment. On September 6, 2023, defendant responded that it "leaves Plaintiff[] to its proofs regarding taxable costs," but "denies as untrue that Plaintiff is entitled to attorney fees set forth in MCL 500.3148." On September 20, 2023, the trial court held a hearing regarding plaintiff's renewed motion for taxable costs and attorney fees; the parties advanced arguments consistent with their respective filings. The court took the matter under advisement.

On May 30, 2024, the trial court issued an opinion and order granting in part and denying in part plaintiff's renewed motion for taxable costs and attorney fees. The court first concluded that defendant "unreasonably refused to pay claims/bills incurred before March 15, 2021," such that plaintiff was "entitled to an award pursuant to MCL 500.3148(1) for time expended that was attributable to payment of claims/bills incurred before March 15, 2021." In resolving the reasonable rate to award attorney fees, the trial court noted that plaintiff's counsel, Rachel Ratton (RR) and Michael Ratton (MR), were requesting an hourly rate of $450 for RR and $650 for MR. The court, citing the attorneys' respective experience and the mean rate for similarly-situated counsel, resolved that $300 per hour for RR and $375 per hour for MR, constituted reasonable hourly rates.

In determining "the reasonable number of hours expended on recovery of overdue benefits," the trial court delineated the hours performed by RR and MR that were excluded from its analysis "because the time billed was either not attributable to securing payment for bills before March 15, 2021[], was excessive, unnecessary, involved strategy sessions, or the description of work is insufficiently phrased." The court resolved that RR reasonably expended 228.63 hours, but it noted that "[b]ecause the Court must apportion the award to account for hours actually expended that are attributable to securing payment for claims that were unreasonably denied, a downward deviation is warranted." The trial used a pro rata calculation "based on the award on interest in comparison to the total amount awarded," to conclude that an award of $11,706 (39.02 hours x $300 per hour) was proper regarding attorney fees for RR. As for MR, the court opined that MR reasonably expended 58.69 hours, and by "reducing the award to 17.067% of the hours awarded for the same reason that RR's hours were reduced," an award of $3,757.50 ($375 x 10.02

_____

[2] MCL 500.3148(1) states, in pertinent part, that:

> an attorney is entitled to a reasonable fee for advising and representing a claimant in an action for personal or property protection insurance benefits that are overdue. The attorney's fee is a charge against the insurer in addition to the benefits recovered, if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment . . . .

hours) in attorney fees for MR was proper. Plaintiff was awarded a total of $14,463.50 in attorney fees.

In its opinion and order, the trial court further determined that plaintiff was entitled to costs as the prevailing party, including $20 for the motion that resulted in judgment under MCL 600.2441(2)(b), $20 for the proceedings before trial pursuant to MCL 600.2441(2)(a), and $150 for trial per MCL 600.2441(2)(c). Regarding deposition and expert witness fees, the court resolved that plaintiff was entitled to $3,812.01 for its discovery depositions, and $2,323.99 for the "de bene esse video depositions that were taken and used in trial in this matter." The trial court recognized that plaintiff requested "an award for the fees paid to expert witnesses for their depositions. Specifically, Plaintiff requests $2,700.00 for Dr. [Jonathan] Nzoma, $2,250.00 for Dr. [Daniel] Park, and $3,000.00 for Dr. [Donald] Garver." But the court advanced, "It appears that Dr. Nzoma, Dr. Park, and Dr. Garver charged and were paid in excess of an ordinary witness fee but the Court was not provided with their minimal appearance fee and/or hourly rate."

The trial court resolved that $500 per hour was an appropriate rate for the cited expert witnesses, and as each witness testified for approximately an hour and a half, plaintiff was entitled to $2,250 for these costs. The court additionally opined, "The Plaintiff has not provided specific authority to tax the cost of facilitation on January 18, 2022 and case evaluation on September 7, 2021 so $570.00 and $75.00 respectively, are excluded from the award," in addition to various printing costs. Plaintiff was awarded a total of $8,576 in taxable costs. The court ordered defendant to pay $24,039.50 in attorney fees and taxable costs to plaintiff by August 1, 2024.

On June 13, 2024, plaintiff moved for reconsideration of the amount of prevailing party taxable costs and attorney fees awarded in the trial court's May 30, 2024 opinion and order, contending (1) "the amounts awarded by the Court do not reflect a reasonable attorney fee when considering the prevailing case law and the particularized circumstances of this case," (2) the trial court erroneously concluded that "Plaintiff is only entitled to an award for time expended that was attributable to payment of claims incurred before March 15, 2021," (3) the court improperly excluded several hours of pertinent work performed by plaintiff's counsel. Plaintiff further argued that it was entitled to taxable costs for all filed motions, as opposed to solely those that resulted in judgment, as well as the filing fees for the complaint and jury demand. Plaintiff additionally asserted that the trial court "erred in significantly reducing the costs awarded in connection with the depositions of three expert physician witnesses," because the parties did not dispute the reasonableness of the expert witness fees, and the trial court "has knowledge of the extensive qualifications, background, and experience of the expert witnesses." Plaintiff requested "$14,932.80 in prevailing party taxable costs, the full amount requested and to which Plaintiff is entitled pursuant to statute, court rule, and caselaw."

On July 16, 2024, the trial court entered an order granting in part and denying in part plaintiff's motion for reconsideration regarding the taxable costs and attorney fees. In its order, the court stated:

> The Court committed palpable error by failing to award the Plaintiff all motion fees, the cost of filing the Complaint, and the cost of the jury demand. Therefore, the Plaintiff is awarded an additional $515.00 (14 motions at $20.00 each, $150.00 filing fee for Complaint, and $85.00 for the Jury Demand). Further, although not

-10-

pointed out by the Plaintiff, the Court noticed that it awarded $225.25 rather than $255.25 for the Dr. Park De Bene Esse transcript fee on 6/14/23. Therefore, the Plaintiff is awarded an additional $30.00 for a total additional award of $545.00.

The Court clarifies that the Plaintiff did not provide authority for taxing the following [printing] costs because the Plaintiff has them marked as "non-billable" and never requested the costs be taxed.

* * *

The remainder of the motion regarding costs is denied.

The total amount of costs awarded is $9,121.00 ($8,576.00 original amount awarded + additional $545.00 discussed above.)

As to attorney fees, the Court finds that $300.00 per hour is still a reasonable rate for attorney [RR] but will deviate upward to $350.00 per hour because of the necessary time, labor, and skill required to successfully litigate this case before a jury. The total amount of attorney fees awarded for [RR] is increased to $13,657.00 (39.02 hours x $350.00/hour).

The remainder of the request regarding a change in attorney fees is denied.

Following the issuance of the cited order, this appeal ensued.

## II. STANDARDS OF REVIEW

This Court reviews a trial court's decision on a motion for new trial or remittitur for an abuse of discretion. *Taylor v Kent Radiology*, 286 Mich App 490, 522; 780 NW2d 900 (2009). Likewise, this Court reviews a trial court's determination on a motion for relief from judgment under MCR 2.612(C)(1) for an abuse of discretion. *Peterson v Auto Owners Ins Co*, 274 Mich App 407, 412; 733 NW2d 413 (2007). "An abuse of discretion generally occurs only when the trial court's decision is outside the range of reasonable and principled outcomes . . . . " *Dorsey v Surgical Institute of Michigan*, *LLC*, 338 Mich App 199, 223; 979 NW2d 681 (2021) (quotation marks and citation omitted). "Questions of law, including questions of statutory interpretation, are reviewed de novo by this Court." *Strata Oncology*, *Inc v Dep't of Treasury*, 348 Mich App 378, 387; 18 NW3d 367 (2023). "De novo review means that we review the legal issue independently, without required deference to the courts below." *Twp of Hopkins v State Boundary Comm*, 340 Mich App 669, 683; 988 NW2d 1 (2022) (quotation marks and citation omitted).

"We review for an abuse of discretion a trial court's award of attorney fees and costs." *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008). A request for attorney fees under MCL 500.3148(1) involves a mixed question of law and fact. *Ross v Auto Club Group*, 481 Mich 1, 7; 748 NW2d 552 (2008). The findings of fact underlying an award of attorney fees are reviewed for clear error, *Brown v Home-Owners Ins Co*, 298 Mich App 678, 690; 828 NW2d 400 (2012), while pertinent questions of law are reviewed de novo, *Loutts v Loutts*, 298 Mich App 21, 24; 826 NW2d 152 (2012). A finding is clearly erroneous when, although there is evidence to support it, the appellate court is left with a definite and firm conviction a mistake was made after review of

-11-

the entire record. *Marilyn Froling Revocable Living Trust v Bloomfield Hills Country Club*, 283 Mich App 264, 296; 769 NW2d 234 (2009). This Court further reviews a motion for reconsideration for an abuse of discretion. *Woods v SLB Prop Mgt*, *LLC*, 277 Mich App 622, 629; 750 NW2d 228 (2008).

## III. ANALYSIS

## A. FEE SCHEDULE

Defendant argues that the trial court abused its discretion by declining to apply the fee schedule delineated under MCL 500.3157 to the costs awarded by the jury for medical services plaintiff provided after July 1, 2021. Because defendant waived this issue, we disagree.

> "A waiver is a voluntary and intentional abandonment of a known right." *Braverman v Granger*, 303 Mich App 587, 608; 844 NW2d 485 (2014) (quotation marks and citation omitted). "A party cannot stipulate [to] a matter and then argue on appeal that the resultant action was error." *Holmes v Holmes*, 281 Mich App 575, 588; 760 NW2d 300 (2008) (quotation marks and citation omitted). "A party who waives a right is precluded from seeking appellate review based on a denial of that right because waiver eliminates any error." *The Cadle Co v Kentwood*, 285 Mich App 240, 255; 776 NW2d 145 (2009). To allow a party to assign error on appeal to something that he or she deemed proper in the lower court would be to permit that party to harbor error as an appellate parachute. *In re Hudson*, 294 Mich. App 261, 264, 817 NW2d 115 (2011). [*LeFever v Matthews*, 336 Mich App 651, 670 n 3; 971 NW2d 672 (2021).]

The representations and conduct of defense counsel in the trial court establish that defendant voluntarily and intentionally abandoned any right to require application of the fee schedule set forth in MCL 500.3157 to the jury's verdict for plaintiff's services rendered after July 1, 2021. Throughout the lower court proceedings, the parties disputed the admissibility of evidence and arguments related to the fee schedule, and those disputes carried into trial. However, defense counsel did not expressly argue at trial that the jury was required to apply the fee schedule in rendering its verdict, nor did defendant file a pretrial motion seeking enforcement of the fee schedule on that basis.[3] Further, defense counsel failed to present sufficient testimony establishing what the proper charges for *all* services provided after July 1, 2021, would have been under the fee schedule. While Ellis testified regarding the proper cost of Benjamin's neck surgery and office

---

[3] While defendant cites to *Matti v Tahnun*, unpublished per curiam opinion of the Court of Appeals, issued February 22, 2024 (Docket Nos. 364473 and 364975), pp 4-8, to support its argument, the defendant in *Matti* preserved its claim concerning the applicability of the fee schedule under MCL 500.3157 by moving in limine to preclude claims that it said exceeded the fee schedules located under the statute, and arguing that the "the plain language of MCL 500.3157 mandated the application of the fee schedule to plaintiff's medical expenses incurred after July 1, 2021," *id*. at 2. Further, the trial court granted the defendant's motion, and the ensuing jury verdict was reduced accordingly. *Id*.

visits under the fee schedule, she was unable to provide a monetary value for the two injections administered to Benjamin after July 1, 2021. Instead, she estimated their cost as the remainder of the approximately $20,000 total reimbursement rate charges for all services. Moreover, the thrust of defendant's trial strategy was that plaintiff was not entitled to any reimbursement whatsoever for those charges. During closing arguments, defense counsel asserted, "[Defendant] pays what it owes and it's obligated to pay nothing more," and that "[Defendant] overpaid, and we ask you to ensure that there's no more overpayment." Defense counsel made no reference whatsoever to the fee schedule or to MCL 500.3157, nor did defense counsel present any argument establishing what the proper charges would have been pursuant to the statute.

Defense counsel further affirmatively agreed to the jury instructions explicitly advising that the fee schedule was not binding, but rather was merely a factor for the jury to consider in assessing the reasonableness of the charges at issue. See *Grant v AAA Michigan/Wisconsin*, *Inc (On Remand)*, 272 Mich App 142, 148; 724 NW2d 498 (2006) ("A party who expressly agrees with an issue in the trial court cannot then take a contrary position on appeal.") The parties' stipulated verdict form likewise did not distinguish between charges based on date or type of service and did not advise the jury that was it required to reduce any award pursuant to the fee schedule delineated in MCL 500.3157. Notably, we agree that the fee schedule provided under MCL 500.3157 was applicable to plaintiff's treatment after July 1, 2021, because plaintiff's policy was renewed after the June 11, 2019 effective date of the 2019 PA amendments to the no-fault act, thereby incorporating the fee schedule of the amended MCL 500.3157 into the underlying insurance policy, pursuant to the Michigan Supreme Court's decision in *Andary v USAA Cas Ins Co*, 512 Mich 207; 1 NW3d 186 (2023). However, because we have determined that the issue was waived, defendant is not entitled to relief.[4]

## B. TAXABLE COSTS AND ATTORNEY FEES

Plaintiff argues that the trial court erred by neglecting to award plaintiff the entirety of taxable costs and attorney fees requested. We agree in part and disagree in part.

" 'Costs will be allowed to the prevailing party in an action, unless prohibited by statute or by these rules or unless the court directs otherwise, for reasons stated in writing and filed in the action.' " *Guerrero v Smith*, 280 Mich App 647, 670; 761 NW2d 723 (2008), quoting MCR 2.625(A)(1). "The power to tax costs is purely statutory, and the prevailing party cannot recover such expenses absent statutory authority." *Smith*, 280 Mich App at 670. "Taxation of costs under MCR 2.625(A) is within the discretion of the trial court." *Blue Cross & Blue Shield of Mich v Eaton Rapids Community Hosp*, 221 Mich App 301, 308; 561 NW2d 488 (1997). "A trial court is not required to justify awarding costs to a prevailing party; rather, the court must justify the failure to award costs." *Id*.

---

[4] Because we conclude that defendant failed to preserve the cited issue, we further decline to address plaintiff's contentions regarding the trial court's ability to reduce a no-fault award post-verdict.

Plaintiff, as the prevailing party at trial, moved, in part, to tax costs under MCR 2.625 in the amount of $14,932.80. On appeal, plaintiff solely contests the costs awarded for the depositions of three expert physician witnesses. While plaintiff sought $2,700 for Dr. Nzoma, $2,250 for Dr. Park, and $3,000 for Dr. Garver for their respective hour-and-a-half depositions, the trial court determined that these witnesses "charged and were paid in excess of an ordinary witness fee." The court further opined that because it was "not provided with their minimal appearance fee and/or hourly rate," $750 was a reasonable and taxable cost for each expert physician.

MCL 600.2421b(1) states, in pertinent part, that " 'Costs and fees' means the normal costs incurred in being a party in a civil action after an action has been filed with the court, those provided by law or court rule," which includes "[t]he reasonable and necessary expenses of expert witnesses as determined by the court." MCL 600.2164(1) further instructs:

> No expert witness shall be paid, or receive as compensation in any given case for his services as such, a sum in excess of the ordinary witness fees provided by law, unless the court before whom such witness is to appear, or has appeared, awards a larger sum, which sum may be taxed as a part of the taxable costs in the case. Any such witness who shall directly or indirectly receive a larger amount than such award, and any person who shall pay such witness a larger sum than such award, shall be guilty of contempt of court, and on conviction thereof be punished accordingly.

"The trial court also has discretion under MCL 600.2164 to include fees for the expert's preparation time." *Smith*, 280 Mich App at 675.

In the present case, plaintiff's renewed motion for taxable costs and attorney fees omitted an itemized explanation of the costs associated with obtaining the depositions of the expert physicians. Instead, the verified bill of costs reflected the total payments made to each witness. See *Rickwalt v Richfield Lakes Corp*, 246 Mich App 450, 466-467; 633 NW2d 418 (2001). This omission presumably explains the trial court's reference to the absence of the minimal appearance fee or hourly rate for Dr. Nzoma, Dr. Park, and Dr. Garver, citing *Van Elslander v Thomas Sebold & Assoc, Inc*, 297 Mich App 204, 219; 823 NW2d 843 (2012). Plaintiff subsequently attempted to remedy this deficiency by attaching affidavits from the expert physicians affirming the overall costs associated with their depositions, in addition to the "legal fee schedules" of Dr. Park and Dr. Garver, to its motion for reconsideration.

Notably, however, the trial court did not provide any explanation, either in its initial opinion and order partially granting plaintiff's motion for taxable costs and attorney fees, or in its subsequent order partially granting plaintiff's motion for reconsideration, as to why the expenses of the expert witnesses were unreasonable or why $500 was deemed a sufficient hourly fee for each witness. Likewise, the court did not address plaintiff's exhibits reflecting the costs of the expert physician witness depositions, including the aforementioned affidavits, fee schedules, or the witnesses' respective testimonies. Rather, the trial court broadly concluded that $500 constituted a sufficient hourly rate for each physician. Thus, the trial court abused its discretion by neither adequately explaining the unreasonableness of plaintiff's expert witness fees nor

justifying $500 as a proper hourly alternative.[5] Accordingly, we vacate the portion of the underlying opinion and order pertaining to expert witness fees and direct the trial court to give further consideration for its reduction in the costs awarded for plaintiff's requested expert witness fees.

Plaintiff further challenges the trial court's award of attorney fees under MCL 500.3148 on several grounds. Under the no-fault act, personal protection insurance (PIP) benefits "are payable as loss accrues." MCL 500.3142(1). PIP benefits "are overdue if not paid within 30 days after an insurer receives reasonable proof of the fact and of the amount of loss sustained." MCL 500.3142(2). MCL 500.3148 states, in pertinent part:

> (1) Subject to subsections (4) and (5), an attorney is entitled to a reasonable fee for advising and representing a claimant in an action for personal or property protection insurance benefits that are overdue. The attorney's fee is a charge against the insurer in addition to the benefits recovered, if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment . . . .

"The purpose of the no-fault act's attorney-fee penalty provision is to ensure prompt payment to the insured." *Ross*, 481 Mich at 11. In *Moore v Secura Ins*, 482 Mich 507, 517; 759 NW2d 833 (2008), the Michigan Supreme Court determined that MCL 500.3148(1) "establishes two prerequisites for the award of attorney fees." First, the benefits must be overdue as contemplated by MCL 500.3142(2), meaning they were "not paid within 30 days after [the] insurer receives reasonable proof of the fact and of the amount of loss sustained." *Id*., quoting MCL 500.3142(2) (quotation marks omitted; alteration in original). Second, the trial court must resolve if the insurer "unreasonably refused to pay the claim or unreasonably delayed in making proper payment." *Id*., quoting MCL 500.3148(1) (quotation marks omitted). "When benefits initially denied or delayed are later determined to be payable, a rebuttable presumption arises that places the burden on the insurer to justify the refusal or delay." *Bronson Methodist Hosp v Auto-Owners Ins Co*, 295 Mich App 431, 457; 814 NW2d 670 (2012) (quotation marks and citation omitted). "However, a refusal to pay or a delay in payment is not unreasonable if it is based on a legitimate question of statutory construction, constitutional law, or factual uncertainty," rather, the "determinative factor is not whether the insurer ultimately is held responsible for benefits, but whether its initial refusal to pay was unreasonable." *Id*. (quotation marks and citation omitted).

Plaintiff argues that the trial court improperly apportioned attorney fees based on the interest awarded in relation to the amount awarded, notwithstanding that the entirety of the benefits was overdue. In its opinion and order partially granting plaintiff's renewed motion for taxable costs and attorney fees, the trial court expressed that it had difficulty resolving "1) whether Defendant unreasonably refused to pay the claim in light of the implementation of the MCL 500.3157 fee schedule after some of the treatment provided but before trial; and 2) how to

---

[5] As previously noted, the trial court resolved that $500 was an adequate hourly rate for each expert physician witness, and because each witness testified for an hour and a half, the cost awarded for each deposition was $750, amounting to a total of $2,250. While the $500 hourly rate *may* be appropriate, the limited record before us does not support such a determination.

apportion an award for attorney fees if the Court were to find Defendant unreasonably refused." The court ultimately determined that "a bona fide factual uncertainty did not exist and despite the uncertainties in the realm of No-Fault law due to statutory changes, the Defendant unreasonably refused to pay claims/bills incurred before March 15, 2021," such that plaintiff was solely "entitled to an award pursuant to MCL 500.3148(1) for time expended that was attributable to payment of claims/bills incurred before March 15, 2021." Plaintiff contends that the trial court's resolution was contrary to the jury verdict form, in which the jurors answered "yes" to the question, "Was payment for any of the expenses or losses to which the Plaintiff was entitled overdue?" However, the question asked whether *any* of the pertinent expenses were overdue, not whether *all* of the pertinent expenses were overdue. See *Moore v Secura Ins*, 482 Mich 507, 518; 759 NW2d 833 (2008) ("The jury's conclusion that plaintiff was owed work loss benefits did not also require it to conclude that those benefits were overdue.") Further, the verdict form explained that overdue claims were subject to a 12% annual interest rate and included an additional section asking, "If your answer is 'yes,' what is the amount of interest owed to the Plaintiff on overdue benefits (include only interest not already paid by the Defendant)?" The jury answered $8,912, which, as the court recognized, corresponds to unpaid claims totaling $74,266.28 before March 15, 2021— an amount that yields $8,912.04 in interest at a 12% rate.

The present circumstances appear analogous to those at issue in *Moore*, 482 Mich at 507. In *Moore*, *id*. at 510, the Michigan Supreme Court considered "the assessment of attorney fees for 'overdue' benefits under Michigan's no-fault insurance statutes." The *Moore* Court concluded, "Because the jury awarded plaintiff only $98.71 in penalty interest and failed to award penalty interest on the $42,755 awarded in unpaid work loss benefits, . . .those benefits do not qualify as overdue pursuant to MCL 500.3142(2)." *Id*. at 512. In its analysis, the Court placed significant weight on the structure of the jury verdict form, which required the jury to make two distinct determinations: first, whether any benefits were overdue, and second, the amount of interest owed on those overdue benefits. *Id*. at 517-519. Although the jury answered "yes" to that question of whether benefits were overdue, it awarded a specific dollar amount of interest that corresponded to only a portion of the total benefits claimed. *Id*. The Michigan Supreme Court resolved that this established the jury's determination that only some of the benefits were overdue, not all of them. *Id*. The Court further explained that a general finding that benefits were overdue does not compel the conclusion that every claimed benefit was untimely paid, rather, when the jury quantified penalty interest in an amount that aligns with a subset of the claimed benefits, that determination controls. The *Moore* Court opined:

> The Court of Appeals erred by failing to follow the unambiguous language of MCL 500.3142 and MCL 500.3148. In this case, despite instructions from the trial court and on the verdict form, the jury declined to award penalty interest on the $42,755 in unpaid work loss benefits that it awarded plaintiff. From its award of $98.71 in penalty interest, we conclude that the jury found that only one week of work loss benefits was overdue. Therefore, the jury must have found that the $42,755 in work loss benefits was not overdue under the plain meaning of MCL 500.3142 and MCL 500.3148. Because, as noted above, there is an interpretation of the evidence that provides a logical explanation for this finding, . . .we agree with the jury's conclusion that the $42,755 in work loss benefits was not overdue at the time of the trial. [*Id*. at 519-520 (quotation marks and citations omitted).]

-16-

Accordingly, *Moore* further held that only the amount of benefits on which interest is awarded may be considered overdue, and thus, attorney fees must be apportioned because attorney fees may only be awarded for hours spent recovering the portion of the awarded benefits that were deemed overdue by the jury. *Id.* at 512, 525. The *Moore* Court additionally clarified that plaintiff was "not entitled to attorney fees incurred to collect the $42,755 awarded by the jury," because the defendant did not unreasonably refuse to pay work loss benefits. *Id.* at 524.

As in *Moore*, the jury here was asked whether any benefits were overdue and separately determined the amount of interest owed on overdue benefits. Although the jury answered "yes" to the general question regarding overdue benefits, its specific interest award reflects a finding that only a portion of the claimed benefits was overdue. Under *Moore*, such a verdict does not support the conclusion that all benefits were untimely paid, rather, penalty interest must be limited to the particular benefits the jury determined were overdue, as evidenced by the amount of interest awarded. Accordingly, the trial court did not abuse its discretion, or otherwise err, by apportioning fees, based on the subsection of benefits found to be overdue by the jury, particularly in light of the complexities surrounding the applicability of the fee schedule under MCL 500.3157 to charges incurred after March 15, 2021.

Plaintiff further argues that the attorney fees awarded were unreasonable and constituted an abuse of discretion. In *Komendat v Gifford*, 334 Mich App 138, 152-153; 964 NW2d 75 (2020), this Court outlined the process for determining a reasonable attorney fee under MCL 500.3148:

> First, the trial court must begin its analysis by determining the reasonable hourly rate customarily charged in the locality for similar services. Second, having determined the proper hourly rate, the trial court must then multiply that rate by the reasonable number of hours expended in the case to arrive at a baseline figure. Third, the trial court must consider all of the remaining factors set forth in [*Wood v DAIIE*, 413 Mich 573; 321 NW2d 653 (1982)] and in MRPC 1.5(a) to determine whether an up or down adjustment of the baseline fee is appropriate. [Quotation marks, citations, and brackets omitted.]

In this case, the trial court properly determined the hourly rates for plaintiff's counsel. The court considered the attorneys' affidavits, the 2023 *Economics of Law Practice Report*, and an "Activities Export" document detailing the services performed and the time spent on those services. In reaching its determination, the court noted each attorney's years of experience and title, the nature of the action, and the relevant locality, and cited the mean hourly rates based on those attributes. The court initially determined that $300 was a reasonable hourly rate for RR and $375 was a reasonable hourly rate for MR. The trial court subsequently increased RR's hourly rate to $350 in its order partially granting plaintiff's motion for reconsideration "because of the necessary time, labor, and skill required to successfully litigate this case before a jury." Because these rates do not constitute a significant deviation from the mean hourly rates customarily charged in the locality for similar services, and because the court considered the relevant characteristics of each attorney, we cannot conclude that its determination of the reasonable hourly rates fell outside the range of reasonable and principled outcomes.

Plaintiff next asserts that the trial court failed to properly calculate the reasonable number of hours expended in the case. In *Komendat*, 334 Mich App at 155, this Court harmonized "the

requirement that the [attorney] fee reflect the number of hours expended 'in an action' for overdue benefits with the requirement that the time be 'attributable to' recovery of the overdue benefits." This Court resolved that:

> attorney services that supported other aspects of the case, as well as the overdue benefits, should be included, because they are attributable to the overdue benefit claim even if not exclusively so. However, the baseline attorney time should not include time spent on other aspects of the claim that were not relevant to the unreasonably denied benefits. For instance, a motion relevant only to benefits that were reasonably denied should not be included, but a motion that relates to the entire case, or at least some benefit found to be unreasonably denied, should be.[] In sum, all reasonable attorney time in an action that recovers an overdue benefit unreasonably withheld should be included in the baseline number of hours unless those services were dedicated solely to the recovery of benefits that were found not overdue, in which case that time was not attributable to recovery of the overdue benefit.
>
> *   *   *
>
> In sum, in determining the baseline fee in accordance with [*Pirgu v United Servs Auto Ass'n*, 499 Mich 269; 884 NW2d 257 (2016)], the court is to include all attorney time that was relevant to recovery of the overdue benefit, even if that time was also relevant to other aspects of the case. Attorney time that was related only to other aspects of the action, and did not bear on the benefits unreasonably withheld, should be excluded from the baseline. Any further limitation on the baseline number of hours would be difficult to square with *Pirgu,* the statute, or with the principle that the no-fault act's provisions should be liberally construed in favor of the intended beneficiaries. [*Id*. at 156-158.]

In this case, the trial court excluded certain hours for plaintiff's counsel "because the time billed was either not attributable to securing payment for bills before March 15, 2021[], was excessive, unnecessary, involved strategy sessions, or the description of work is insufficiently phrased." Although plaintiff's counsel asserted that RR billed 278.57 hours and MR billed 64.69 hours in this matter, the trial court determined that, after excluding the noncompensable hours, a reduction of 49.94 hours warranted for RR, resulting in 228.63 hours reasonably expended, and a reduction of six hours was warranted for MR, resulting in 58.69 hours reasonably expended. The court provided a chart delineating the dates of the billed services, the hours deducted, and a brief description of each entry, along with footnotes explaining examples of why certain hours were excluded. Because the court reviewed plaintiff's verified bill of costs and, after considering *Komendat*, excluded certain hours, we cannot conclude that the trial court abused its discretion.

Plaintiff lastly asserts that the trial court improperly concluded that a downward deviation from the baseline fee was warranted based on the erroneous assumption that only a portion of the claims was unreasonably denied. As previously noted, the trial court "must consider all of the remaining factors set forth in [*Wood*] and in MRPC 1.5(a) to determine whether an up or down adjustment of the baseline fee is appropriate." *Komendat*, 334 Mich App at 152-153 (quotation

marks and citation omitted). This Court has identified the factors that the trial court must consider as follows:

> (1) the experience, reputation, and ability of the lawyer or lawyers performing the services,
>
> (2) the difficulty of the case, i.e., the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly,
>
> (3) the amount in question and the results obtained,
>
> (4) the expenses incurred,
>
> (5) the nature and length of the professional relationship with the client,
>
> (6) the likelihood, if apparent to the client, that acceptance of the particular employment will preclude other employment by the lawyer,
>
> (7) the time limitations imposed by the client or by the circumstances, and
>
> (8) whether the fee is fixed or contingent. [*Id*. at 153, quoting *Pirgu*, 499 Mich at 282.]

"These factors are not exclusive, and the trial court may consider any additional relevant factors." *Pirgu*, 499 Mich at 282. "In order to facilitate appellate review, the trial court should briefly discuss its view of each of the factors above on the record and justify the relevance and use of any additional factors." *Id*.

We disagree with plaintiff's contention that the trial court was barred from employing a pro rata calculation to determine the extent of any downward deviation from the baseline fee based on the interest award in comparison to the total amount awarded. Because one of the factors a trial court may consider is "the amount in question and the results obtained," the court reasoned that the specific interest award indicated that only a portion of the claimed benefits was overdue and, because MCL 500.3148 applies to overdue benefits that are unreasonably refused or delayed, concluded that it was appropriate for the attorney-fee award to correspond to that limited subset of benefits. See *Moore*, 482 Mich at 523-525. In resolving whether a deviation was warranted, the trial court further recognized that, although "the time billed by RR for trial preparation may appear excessive on its face, . . .the Court knows that thousands of pages of medical documents were implicated in the trial and RR was extremely organized and well versed in the entire claim file." The court additionally stated that it "not find any further upward or downward deviation is warranted," as to either attorney, citing *Pirgu* and *Wood*. Accordingly, because plaintiff has failed to establish that the trial court abused its discretion, or otherwise erred, in its analysis, we affirm the awarded amount of attorney fees.

IV. CONCLUSION

In Docket No. 367653, we affirm the judgment issued in favor of plaintiff. In Docket No. 371964, we affirm in part the trial court's opinion and order regarding plaintiff's renewed

motion for taxable costs and attorney fees as to all taxable costs, except those pertaining to the deposition fees of the three expert physician witnesses, which we vacate and remand for further consideration of the reduction in the costs awarded for plaintiff's requested expert witness fees. We affirm the portion of the opinion and order pertaining to attorney fees.

Affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ James Robert Redford
/s/ Kathleen A. Feeney
/s/ Mariam S. Bazzi